## BRIDGES *v.* THE STATE.

1. Under section 929 of the Penal Code, the indictment in the present case was sufficiently accurate in its averments to withstand the demurrers, general and special, which were filed by the defendant.
2. Where upon the trial of a felony case it becomes necessary to complete a panel of jurors, talesmen may be supplied either by summoning persons regularly drawn by the judge for that purpose, or, without their being drawn, the sheriff by direction of the judge may summon them from among persons authorized by law to serve as jurors. In the latter case the law devolves upon the sheriff alone the duty of selecting the persons so qualified whom he will summon, and it is error for the trial judge to indicate in any manner to him the persons whom he shall so summon. Therefore, where in a county in which a superior court continues in session longer that one week, and at the commencement of the second week, the judge causes full panels of jurors to be organized from the persons regularly drawn and summoned for that week, it is error for him to direct the clerk, in making up a panel of forty-eight jurors for the trial of such a case, to include in such panel jurors who have served during the preceding week and whom the judge has directed to report for duty during the week in which the case is being tried, such persons having been neither regularly drawn as talesmen by the judge, nor regularly summoned by the sheriff.
3. Upon the trial of one indicted for the offense of embezzlement, it is competent for the State, after showing the receipt by the accused of the public fund alleged to have been embezzled and his failure to account for the same, to introduce evidence that at or about the time the embezzlement was alleged to have been committed the accused was pressed for money and resorted to devious methods in order to obtain it, that he gave false accounts as to the disposition of the money so intrusted to him, and in making such account had endeavored to conceal the real state of affairs by forging and uttering receipts and other papers which were presented by him as vouchers. Such evidence is admissible, not as direct evidence

of the unlawful conversion, but as showing circumstances from which the jury may draw such inferences as they may believe the circumstances so proved would authorize.

4. Under the provisions of section 1402 et seq. of the Political Code, since the act of the General Assembly approved December 13, 1894, went into effect, that portion of the State school fund which is devoted to the maintenance of the public-school system in the City of Rome is not the property of the County of Floyd, and the county school commissioner of that county has no authority, in his official capacity, either to receive or to disburse it; and hence an indictment alleging that such officer had embezzled a certain sum of money which was alleged therein to be the property of the County of Floyd, is not supported by evidence that he had received and appropriated a fund belonging to the City of Rome, and it was error for the judge to so charge the jury. As to such funds, however, as may have come into his hands from that source prior to the passage of the act above referred to, the ownership was well laid in the County of Floyd.

5. Where an indictment alleged that upon a day certain, and upon divers days between given dates, the accused embezzled a certain fund with which he was intrusted, a receipt signed by him, bearing date subsequent to the date first alleged and prior to the finding of the indictment, was admissible and was prima facie evidence that he had received the fund therein described upon the day named in the receipt. Such a receipt, however, is subject to such parol explanation as the accused might be able to give concerning the transaction.

6. Other than as above ruled, no substantial error was committed upon the trial.

Argued October 16, — Decided November 15, 1897.

Indictment for embezzlement. Before Judge Henry. Floyd superior court. July term, 1897.

On July 29, 1896, the grand jury of Floyd county returned an indictment against W. M. Bridges for embezzlement, "for that the said W. M. Bridges, in said county, on the first day of January, one thousand eight hundred and ninety-four, and on divers other days since that date, being then and there county school commissioner for the County of Floyd, having possession, custody and control of the funds set apart, apportioned and appropriated by law as a public-school fund for the use and benefit of the public schools of the County of Floyd, and received by said W. M. Bridges as school commissioner as aforesaid for the County of Floyd, at divers times from January first, one thousand eight hundred and ninety-four, and March twenty-first, one thousand eight hundred and ninety-six, and in divers

sums aggregating the amount of $39,915.87, to be applied to the use and benefit of said public schools of said county, did, at divers times between January the first, one thousand eight hundred and ninety-four, and March the twenty-first, one thousand eight hundred and ninety-six, and in divers sums, embezzle, steal, secrete, and fraudulently take and carry away the sum of $5,475.15, of the value of $5,475.15, of said sum so had and received by the said W. M. Bridges as aforesaid, being the public-school fund and property of Floyd county as aforesaid, and did then and there, at divers times and in divers sums, convert the said $5,475.15 to his own private use, by mutilating and making false entries upon the books, checks, returned checks, receipts, teachers' reports, certificates, vouchers and other papers connected with and appertaining to said office of county school commissioner of Floyd county, to conceal and secrete said embezzlement of said money." The indictment then proceeds to set forth a list, so far as the same is known to the grand jury, of the checks signed by the accused as county school commissioner, showing the names of the persons to whom the same were issued, the dates when issued, the amounts for which issued, and the amounts to which they were changed and raised by the accused after they had been paid and returned to him, and which he purposed to use and did present and offer to use as vouchers to the board of education of Floyd county, in order to cover up, secrete and conceal said embezzlement of said money. One of the items in this list is, "Agnes Pentacost, col., November 5, 1894, $5.00 raised to $25.00." The other items are stated similarly, varying in names, dates and amounts. The indictment then sets forth a list of certificates signed by the accused as county school commissioner, showing the names of the persons to whom, the dates when, and the amounts for which they were issued, and the amounts to which they were changed and raised by the accused after being paid and returned to him, which he proposed to use and did present and offer as vouchers to the board of education of Floyd county, in order to cover up, secrete and conceal said embezzlement of said money. One item in this list is, "Ella Collier, September 9, 1895, $6.00 raised to $16.00." The other items are stated sim-

ilarly, varying in names, dates and amounts.　Also, a list of receipts signed by the accused, with like charge as to their alteration by him and his presentation of them as vouchers for the purpose before alleged.　Also, a list of forged, false and fraudulent and bogus checks, receipts, certificates, and teachers' reports, signed by the accused as such commissioner and issued by him for the purpose of using them as vouchers, and actually presented and offered by him as vouchers, to said board for the purpose before alleged.　And finally is set forth a list, so far as known to the grand jury, of the checks, the names of the parties for whom they were made and to whom paid, their dates, and the amounts paid upon them, signed by the accused as county school commissioner, and on which the $5,475.15 or a part thereof was so drawn and applied to his own use fraudulently, and by him embezzled, secreted and stolen as aforesaid. This list consists of the following four items: Hamilton Yancey & Co., or order, February 7, 1896, $7.00.　First Bank for Parker & Duncan, or order, February 4, 1896, $86.00.　J. B. Chamblee, or order (no date specified in check), $3.50.　Bass & Bro., or order, May 3, 1896, $11.23.

The defendant demurred to the indictment on the grounds: (1) It is insufficient in law.　(2) It is not alleged that the crime attempted to be charged was committed in Floyd county, State of Georgia.　(3) No day or days are alleged on which the crime was committed.　(4) No month or months are set forth in which the crime was committed.　(5) Nor any year or years so set forth.　(6) Neither the time nor place of the commission of the crime is set forth.　(7) Joinder in the same count of several distinct kinds of crimes and misdemeanors having separate and distinct penalties.　(8) Joinder in the same count of distinct crimes and misdemeanors with several distinct attempts to commit such several and distinct crimes and misdemeanors, each having separate and distinct penalties.　(9) The ownership of the money referred to is not correctly set forth. If any such fund existed, it was and is not the property of the County of Floyd.　It was the property of (*a*) the State of Georgia; (*b*) the Board of Education of the County of Floyd; (*c*) the City of Rome.　(10) It is not plainly and

distinctly alleged that defendant embezzled any sum. (11) No amount or amounts are set forth as embezzled. (12) The indictment does not charge defendant with embezzlement, but only charges him (and that not clearly and distinctly) with such crimes and misdemeanors as relate to mutilating and making false entries upon the books and papers indefinitely referred to and described. (13) Said books and papers are not set forth in the indictment with sufficient and legal certainty. (14) The allegation that defendant embezzled money by mutilating and making false entries on his own bank-checks and certificates signed by him after they had been paid and returned to him, is insufficient in law. (15) So as to the allegation that he embezzled money by making false entries on receipts signed and issued by him. (16) The allegations relating to the list of forged, false and fraudulent checks, certificates and teachers' reports signed by defendant, are uncertain, confused, indefinite, and tend to charge but do not clearly and distinctly charge him with forgery, or with uttering forged papers, or with embezzlement. (17) The last allegation in the indictment is contradictory to all of the foregoing allegations, and is uncertain, confused, and insufficient in law. It alleges that the whole or a part of the $5,475.15 was drawn on the papers therein mentioned, and embezzled by defendant; it is in the disjunctive, and does not state what sum or what part thereof was drawn, or when and where or how the same was drawn and applied to his own use by him, or from what source any definite sum or any part thereof was drawn.

After conviction, defendant moved for a new trial, on numerous grounds. Some of these are stated in the second division of the opinion. Others are as follows:

The court admitted in evidence a receipt dated August 6, 1895, for $43, given to defendant and signed by W. G. Whitlow, over objection on the ground that there was no charge in the indictment with reference to this paper. Also, over objection that it was irrelevant, the following paper: "Certificate No. 8. To whom it may concern. Rome, Ga., Nov. 1, 1895. This is to certify that W. J. Doster has a just and lawful claim against the board of education of Floyd county, Georgia, for

services rendered as teacher, on which is due him $45, which will be paid him on the 31st day of January, 1896. [Signed] W. M. Bridges, C. S. C. [Endorsed] W. J. Doster, by W. M. Bridges." Also, over the same objection, seventeen other like papers issued to different teachers and for various amounts; these papers having been produced by witness O. H. McWilliams while on the stand. Also, a promissory note for $369, signed by W. M. Bridges, C. S. C., and payable to R. G. Clark, over objection that it threw no light on any charge in the indictment. The court also permitted the solicitor-general to state in the hearing of the jury that his purpose in introducing the note was to show that defendant was indebted to Clark and to show his financial condition.

The court charged the jury: "The defendant in this case may be convicted either upon direct or circumstantial evidence; that is to say, if the evidence, whether it be circumstantial or direct, legally, under the rules the court gives you in the charge, satisfies your minds to the requisite degree of certainty that the defendant is guilty, it will authorize you, and it will become your duty, to convict the defendant." Defendant claims that the court here erred, because there was no evidence authorizing a charge upon circumstantial evidence; and because this charge goes beyond the legal rule in stating that the jury would not only be authorized to convict but that it would be their duty to do so.

In charging upon the prisoner's statement the court used the expression, "you may believe it all, if you do believe it all." It is contended that this was calculated to impress the jury with the idea that the court doubted whether the statement was entitled to belief.

The court charged: "If the money that was embezzled, if any was embezzled by the defendant here, was a part of the fund, and if the evidence shows that it was a part of the fund apportioned and appropriated by the State through its proper officers for the support and maintenance of the public schools of Floyd county, and if it was turned over by the State's officers to the defendant as county school commissioner of this county, then that money would come within the requisite de-

scription and might be the subject of embezzlement in this case; and I charge you that that would be true notwithstanding it might appear from the evidence, if it does appear, that a part of that fund was designed and would go and should go to the support of the public schools of the City of Rome; because, I charge you, that under the law the county school commissioner of Floyd county was authorized, and was the proper officer, to receive from the State authority the entire sum of public money appropriated by the State and apportioned by the State through its officers to the County of Floyd, including the public schools of the City of Rome." This is assigned as error, first, because such part of the fund in controversy, if any part was embezzled by defendant, which belonged to the City of Rome was the property of that city, and there was a fatal variance between the ownership as alleged and the evidence, but the right to decide this question was by the charge withdrawn from the jury. Secondly, because the law did not authorize the payment of the city's part of the school fund to the county school commissioner.

The court, after having charged the jury that to authorize the conviction of the defendant it must appear that the $5,-475.15 charged in the indictment to have been embezzled by him was a part of the $39,915.87 alleged to have been received by him as county school commissioner between January 1, 1894, and March 21, 1896, and that if it was shown that said sum, or part of it, was embezzled by him, it would be their solemn duty to convict him, further charged the jury as follows, in relation to the poll-taxes of 1893 : "It is claimed by the State, among other things, that the defendant received, sometime in the year 1894, $2,800, or some other sum of money, from the tax-collector of this county, as a part of this school fund, being the amount of the net poll-tax for the year 1893. . . I charge you, irrespective of what year the taxes may have been due, or of any reason it was not paid to this defendant until after the first day of January, 1894, and if it was paid to him before the 21st day of March, 1896, then he is chargeable with it under the scope of this indictment, and if he appropriated or embezzled, stole, secreted, and fraudu-

lently converted and appropriated to his own use any part of that fund, more or less, he would be guilty." The errors assigned are, that the court did not instruct the jury to first find whether the alleged $2,800 of poll-taxes constituted a part of the $39,915.87 claimed to have been received by defendant, the issue on trial relating to the disposition of the last-named sum alone; and that the court instructed the jury that the defendant would be guilty if he appropriated or embezzled, stole, secreted, or fraudulently converted to his own use any part of the $2,800, more or less, such charge tending to confuse the jury. Defendant claims that the poll-taxes of 1893, as shown by the evidence, had been properly expended, and that his account for that tax had been passed on and allowed by the grand jury.

In reference to the certificates admitted in evidence the court charged: "They are simply certificates made by the defendant, purporting to show what sums of money were to become due to the teachers named in them respectively; while that is true, the court has allowed them to go to you, and you will consider them for whatever they may be worth, if you find they are worth anything, as establishing any fact or circumstance, possibly, or anything which will aid you in determining whether the defendant is guilty or not guilty in this case." Defendant claims that the court should not have instructed the jury that they could consider the certificates "for whatever they may be worth," nor authorized the jury to consider them in deciding whether defendant was guilty of embezzlement. Further, that they were irrelevant and prejudicial to the defendant, and the jury should have been instructed to disregard them. (A large number of these certificates were in evidence, being in form like the one set forth in a preceding ground of the motion.)

The court further charged: "I have permitted these certificates to go in evidence before you as a part of the entire history of this transaction, whatever it may be, during the period indicated in the indictment between the 1st of January, 1894, and the 21st of March, 1896, and for the purpose of aiding you in determining what circumstances or condition the de-

fendant was then in, and in what manner, if they tend that way, the defendant was attempting to relieve himself under these circumstances, or alter that condition, if you find them useful for that purpose; they are before you for that purpose." It is contended that the evidence here referred to was irrelevant and prejudicial to the defendant, and that the jury should have been instructed to disregard it. Further, that the court intimated and expressed an opinion that these papers were a part of the entire history of this transaction; the effect of this part of the charge being that defendant was in default or embarrassed in relation to the school fund and was attempting to relieve himself under these circumstances or to alter that condition, or that he had some of the county's money in his possession and was attempting by the use of these certificates to make good the supposed default.

The court charged: "The alteration of the check, after it is paid and returned, if anything of this kind was done, would not be a thing upon which you could convict the defendant under this indictment, which charges him with embezzlement, but goes to you with all the other evidence and circumstances to enable you to determine, by applying the rule which I gave you just now in defining circumstantial evidence, to determine whether or not the defendant in this case is guilty or not guilty. That rule as to direct or circumstantial evidence is, that it does not immediately point to the matter at issue, but it proves or tends to prove various circumstances which, by their consistency, sustain the issue claimed." It is alleged that the jury were here instructed to consider the certificates and the bank-checks alleged to have been altered after payment as circumstantial testimony of defendant's guilt; whereas defendant claims that they were not relevant to the issue, and that the doctrine of circumstantial evidence was meagerly and erroneously given, and was not applicable to the case at all.

The court charged: "An act of embezzlement by an officer simply consists in fraudulently and wrongfully converting any part of the public money with which he is legally intrusted as an officer, to his own use; and I charge you, if he has done that, the fact that at some other time he may have paid from

some other fund the amount equal to or greater than that, would not relieve him of the crime of embezzlement." It is insisted that this charge was not justified by the evidence, and that it tended to exclude from consideration payments made by the defendant unless it were also shown that they were made in the identical money or fund originally received by him; and that it tended to exclude from consideration proper credits on his account.

*J. Branham, J. W. Ewing* and *Rowell & Rowell*, for plaintiff in error.

*Moses Wright, solicitor-general*, and *G. A. H. Harris*, contra.

SIMMONS, C. J. Bridges was indicted for the offense of embezzlement. Before his arraignment he filed a general demurrer to the indictment and several special demurrers which will be found in the official report. These demurrers were overruled by the court, and upon the trial Bridges was convicted. He made a motion for a new trial, which was overruled. He excepted both to the overruling of his demurrers and to the refusal of a new trial.

1. The demurrers were, in substance, that the indictment was insufficient in law; that it did not allege that the crime was committed in the County of Floyd; that there was no day, month or year alleged in which the crime was committed; and that it did not set forth the time or place of the commission of the alleged crime. These were the grounds mainly relied upon in the argument here. We have carefully considered the indictment and the demurrers, and have come to the conclusion that the court did not err in overruling the latter. A casual reading of the indictment will show that it does allege that the crime was committed in the County of Floyd. The indictment commences with the words "Georgia, Floyd County," and after the formal parts it alleges "for that the said Bridges, in said county," etc. This is sufficient, in our opinion, to show that the offense was alleged to have been committed in Floyd county.

Counsel for plaintiff in error laid great stress, in the argument here, upon that part of the demurrer which is based upon the ground that the indictment set forth no day, month or year

upon which the crime was alleged to have been committed; that there being no certain day set forth and it being alleged only that the offense was committed between January 1, 1894, and March 21, 1895, the indictment was bad and should have been quashed on demurrer.   The weight of authority seems to be that a certain day must be alleged in an indictment and that an indictment which does not so allege is bad, though there are respectable authorities holding to the contrary.   It is sufficient for us in the present case to say that the demurrer on this point was not well taken, because the indictment does allege a day certain on which the crime was committed.   It reads: "for that the said W. M. Bridges, in said county, *on the first day of January, one thousand eight hundred and ninety-four*, and on divers other days since that date, being then and there county school commissioner for the County of Floyd, having possession, custody and control of the funds set apart, apportioned and appropriated by law as a public-school fund, for the use and benefit of the public schools of the County of Floyd,  .   .   did, at divers times between January the first, one thousand eight hundred and ninety-four, and March the twenty-first, one thousand eight hundred and ninety-six, and in divers sums, embezzle, steal, secrete," etc.   Here is a day certain, January 1, 1894.   It is true that the indictment further alleges that the embezzlement took place between this day and March 21, 1896, but this does not render it bad.   These words, "at divers times," might be rejected as surplusage, as was ruled by this court in the case of *Cook* v. *State*, 11 *Ga.* 53.   A day certain having been alleged, the State could prove that the offense was committed at any time within the statute of limitations up to the finding of the indictment.

Exception is also taken to the following allegation in the indictment: "and did then and there, at divers times, and in divers sums, convert the said five thousand four hundred and seventy-five and 15-100 ($5,475 and 15-100) dollars, to his own private use, by mutilating and making false entries upon the books, checks, returned checks, receipts, teachers' reports, certificates, vouchers, and other papers connected with and appertaining to said office of county school commissioner of Floyd

County, to conceal said embezzlement of said money." It was argued that the indictment charged the conversion of the money by the mutilation, false entries, etc., and that inasmuch as the offense of embezzlement could not have been committed in this manner, there was no crime charged. The sentence in question is undoubtedly a bungling one, and is an inapt way of setting out the manner of the commission of the crime; but construing the whole indictment together, we think it was meant to allege that Bridges converted the money to his own use, and undertook, by mutilating the books, etc., and by making false entries upon them, to conceal the embezzlement. There is a great deal of redundancy and useless verbosity in the indictment; but taking it as a whole, we think it sufficiently accurate in its averments to withstand the demurrers which were filed by the accused.

2. The court having overruled the demurrers, the trial proceeded. It appears from the record that the trial was had at the second week of the term. The court, in the week previous to this, had been engaged in the trial of civil cases; for the trial of these cases a jury of twenty-four had been impaneled; and at the end of the week the judge ordered these jurors to return on Monday of the second week. On that day the case against Bridges was called. The court impaneled a new jury of twenty-four; and in making up a panel of forty-eight, directed the clerk to place upon the panel the names of those jurors who had served during the previous week. Five of these latter having been excused, the other nineteen were placed by the clerk upon the panel. When the completed panel was put upon the accused, he challenged the array on the ground that "said array of jurors contains the names of 19 jurors who have not been drawn, summoned and impaneled as required by law; for that said jurors were in attendance as jurors in this court during the week beginning July 19, 1897, and have been selected out of the jurors who did jury-duty in this court last week, the selection having been made as follows: At the conclusion of the business of the court, on July 24, 1897, the regular panels of jurors then serving were called, and the court excused all of said jurors except the number aforesaid, the

names of the selected jurors being as follows, . . and the jurors excused by the court being, . . ; and the defendant says that, for the reason aforesaid, said panel of jurors is illegal and he should not be required to select a jury from said panel." The trial judge overruled the challenge to the array, and the panel thus made up was put upon the accused. This was clearly and unmistakably error. Under section 858 of the Penal Code of this State, there are but two ways provided for summoning tales jurors for the trial of felonies. It declares that "In making up said panel of forty-eight jurors, or successive panels of any number, the presiding judge may draw the tales jurors from the jury-boxes of the county and order the sheriff to summon them, or he may order the sheriff to summon tales jurors from among persons qualified by law to serve as jurors." The record discloses that neither of these methods was pursued by the judge in summoning tales jurors to try this case, but that he, instead of following the statute, selected and summoned the jurors himself. It is true that they had been regularly summoned as jurors to try civil cases for the preceding week and had served, but this, in our opinion, does not make them legal jurors to try a felony, where they had not been selected as tales jurors in the manner pointed out by law. It was argued that, inasmuch as they had been regularly drawn and summoned and no objection was made to the individual jurors, the accused was not hurt in his defense and had no right to complain. This may all be true, yet the form and mode prescribed by law was not followed. The accused was entitled to have this mode pursued and a legal panel put upon him from which to select his triors. In discussing a question similar to this, in *Cochran* v. *State*, 62 *Ga.* 731, Bleckley, J., said : "Those who are impatient with the forms of law ought to reflect that it is through form that all organization is reached. Matter without form is chaos; power without form is anarchy. The State, were it to disregard forms, would not be a government, but a mob. Its action would not be administration, but violence. The public authority has a formal embodiment in the State, and when it moves, it moves as it has said by its laws it will move. It proceeds orderly, and according to pre-

.established regulations. The State, though sovereign, can not .act upon the citizen in a different manner from that which the laws have ordained. . . Courts are bound by the law no less than the prisoner at the bar. The statute which requires each panel to be put upon the prisoner is imperative, mandatory. No court has a right to disregard it." In the year 1846 it was the law of this State, that when from challenge or otherwise there should not be a sufficient number of jurors to determine causes, it should become the duty of the sheriff to summon as talesmen bystanders or others, qualified by law, to complete the panel. In the trial of Boon for murder, the judge did not direct the sheriff to summon talesmen from the bystanders or others, but opened the grand-jury box, drew talesmen therefrom, and directed the sheriff to summon the persons whose names had been thus drawn. They were put upon the accused, the array was challenged, and the challenge was overruled. This court (1 *Kelly,* 631) held that it was an illegal jury, and that the court erred in not sustaining the challenge. See in that case the views of Lumpkin, J., of the necessity of following the forms of law in the trial of persons accused of felonies.

3. In the trial of the case the State proved the receipt by the accused of a certain amount of money, that it was a fund belonging to the county, and that the accused had failed to account for a portion of the fund. It then offered in evidence certain receipts, certificates, promissory notes, signed by the accused, for the purpose of showing that he was financially embarrassed during and at the time of the alleged embezzlement, that he was pressed for money and in straitened circumstances, and that he had resorted to devious methods to raise money. In the trial of cases of embezzlement, we think that any evidence which tends to show these things is competent and admissible. That a man is financially embarrassed, that he is in straitened circumstances, and that he owes money, tend in some degree to show a motive for the embezzlement. We have read these receipts and the testimony concerning them, and think they are admissible for the purpose offered. At the same time we are inclined to think that some of them, those referred to in the ar-

gument as the McWilliams and Hargrove certificates, are, for that purpose, of but little probative value. If, however, the jury can draw any fair and legal inference from them, we are clear that they are admissible. *Bulloch* v. *State*, 10 *Ga.* 47; United States v. Camp, 2 Idaho, 215; 10 Pac. Rep. 226; 6 Am. & Eng. Enc. Law, 503; 2 Bishop's New Crim. Proc. § 327; 1 Wharton's Crim. Law, §§ 1030, 1062 *a*.

4. The court charged the jury that the ownership of the fund alleged to have been embezzled was properly laid in the County of Floyd, and that, under the law, the county school commissioner of that county was the proper officer to receive from the State the entire sum of money appropriated and apportioned by the State for school purposes to the County of Floyd. Exception is taken to this portion of the charge. By an act approved August 11, 1881 (Acts 1881, p. 421), a public-school system was established for the City of Rome, independent of the county school system. Under its provisions, that portion of the school fund which belonged to the City of Rome was paid by the State authorities to the county school commissioner who was in turn required and authorized to pay it to the city authorities. The general act approved October 27, 1887 (Acts 1887, p. 68), contains no provisions which would authorize the payment by the State authorities directly to the City of Rome her portion of the school fund, but the act approved December 13, 1894, codified as section 1402 et seq. of the Political Code, does provide expressly for such direct payment. As to this matter, the terms of the act (Pol. Code, § 1406) apply to the schools of the County of Floyd and the City of Rome, and the school funds belonging to the latter pass directly into the hands of the proper city authorities. The county school commissioner is not authorized, in his official capacity, to receive or disburse this portion of the funds; and if he does receive any part of it, he does so as an individual and not as a county officer. An indictment which alleges that the accused had, as county school commissioner, embezzled money belonging to the county, is not supported by evidence that the money misappropriated was the property of a city within the county. The indictment in the present case was, therefore, not supported by evidence that

Bridges had received and appropriated to his own use all or a part of that portion of the school fund which belonged to the City of Rome and which was subject to the provisions of the act of 1894. That act, while passed prior to the time of the finding of the indictment, was subsequent to the day named therein as the time of the embezzlement. We think, therefore, that as to funds belonging to the schools of the City of Rome which may have come into the hands of the accused prior to the time when the act went into effect, the ownership was well laid in the County of Floyd.

5. Exception was taken to the admission in evidence of a receipt, signed by defendant and bearing date October 1, 1894, for $2,800, poll-tax for the year 1893. The date of this receipt is prior to that of the indictment and subsequent to that of the alleged embezzlements. It was prima facie evidence that, at the time of its date, the accused received the amount specified in the receipt, which was a portion of the amount of the school fund set apart for the County of Floyd. It was therefore admissible. Like other receipts it was subject to parol explanation; and if the money had been in fact received and fully accounted for prior to the date on which the embezzlement is alleged to have been committed, these facts could have been shown by the accused upon the trial. Such explanation could not be made until the receipt had been put in evidence, and the receipt, unexplained, was admissible and was prima facie evidence of what it stated.

6. Other than as above ruled, we think that there was no substantial error committed upon the trial.

*Judgment reversed. All the Justices concurring.*