## SAMUEL A. ROBINSON v. TERRITORY OF OKLAHOMA.

(Filed September 7, 1905.)

1. INDICTMENT—Number of Grand Jurors Necessary to Find. Under the provisions of section 5349, Wilson's Statutes, an indictment cannot be found except by the concurrence of at least twelve grand jurors.

2. SAME—Evidence before Grand Jury. By the language contained in section 5399, Wilson's Statutes. "When it is not found" is meant when not concurred in by at least twelve grand jurors, and has no reference to the kind or character of evidence received by the grand jury.

3. SAME—Grounds for Setting Aside—Evidence. By the provisions the act of criminal procedure of this Territory, the rights of a defendant indicted are defined, and the causes for which he may attack the indictment, the manner in which the attack must be made and the time for making such attack are prescribed. The reception by the grand jury of hearsay or secondary evidence is not one of the grounds for which the indictment must be set aside upon motion.

4. JURY—Challenge for Cause—Presumption. Under the provisions of the statutes of this Territory a challenge for cause for the reason of incompetency of a juror is a question to be tried by the trial court and in the absence of a complete record of the examination upon that question, the presumption is that the ruling of the trial court was right.

5. SAME—Method of Challenge. Under the provisions of the statutes of this Territory a party desiring to challenge a juror for cause must state the cause of his challenge, and unless the cause is stated the challenge may be disregarded by the court. It is not enough at the conclusion of the examination of the juror, to say, "I challenge the juror for cause."

6. SAME—Objections Waived, When. A known ground of disqualification of a juror before or during the progress of a trial is waived by withholding it or refusing or declining to raise the objection until after the verdict.

7. EVIDENCE—What Proper. The ruling of the court excluding the testimony of the witness Sellers, as to the details of a fight between Sellers and the deceased, a short time before the homicide: Held, not to be reversible error.

8. CRIMINAL TRIAL—Manslaughter—Instructions—What Proper. Where in a criminal action upon a charge of manslaughter in the first degree, the defendant admits firing the fatal shot, but seeks to justify on the grounds of necessary self defense, and that he fired the shot believing that he was then in danger of losing his life or suffering great bodily harm. In order to justify an acquittal, the facts must be such that the jury in the light of all the facts and circumstances known to the defendant can say that as a reasonable man he had grounds for such belief; and an instruction directing the jury that the defendant must have actually and in good faith have thought he was in danger of losing his life or of suffering great bodily harm and that he had reason and cause for such belief, is not erroneous.

9. SAME—Language. The use of the language "Sound reason" "Honest belief," in connection with the instructions given in this case, can only be understood to mean that the defendant must actually in good faith have thought he was in danger of losing his life or suffering great bodily harm, and that he had reason and cause for such belief.

10. SAME. The instructions in plain and unambiguous language directed the jury as to whom the danger should appear.

11 SAME—What Constitutes Proper Instruction. Where the jury are properly instructed that the killing was justifiable if in response to some overt act, it is not error to, in that connection, instruct, "That no man by his own lawless act can create a necessity for acting in self defense, and thereupon assault and injure or kill the person with whom he seeks the difficulty, and then interpose as a defense the plea of self defense. The plea of necessity is a shield only for those who are without fault in occasioning it and acting under it" where the evidence warrants such an instruction.

12. SAME—Evidence. Where there is evidence that just before the homicide, the defendant, upon receiving information that the deceased was abusing him to his friends, went to his saloon, armed himself with the revolver with which he fired the fatal shot. and went to another saloon where he met the deceased, accused him of abusing him to his friends, and after but a few words fired the fatal shot: Held, that under the circumstances the instruction was applicable to the facts.

13. SAME. The instruction when taken in connection with the other instruction given by the court in this case, could not be construed as assuming that the defendant created the necessity by his own lawless act to produce a fear that his life was in danger by deceased, and taking advantage of the plea of self defense made it necessary to kill.

14. SAME—Instructions as to Self Defense. Instruction numbered 13, copied in the opinion, directing the jury that the defendant had the right to proceed with defensive acts until he was in a position of safety, can not be construed, when taken as a whole, as saying that the defendant carried his acts of aggression further than he should have done.

15. SAME—Special Instructions—Refused, When. It is not error for the court to refuse requests for special instructions even though such requests correctly state the law, where they are fully covered by the instructions given by the court, although different to some extent in the language used.

16. SAME. Special instructions requested in this case examined and held to be fully covered by the instructions given by the court.

17. SAME—Method of Procedure. If upon the trial of a criminal case, special instructions are desired by the defendant, he is required by the provisions of the statutes of this Territory to present in writing to the court the instructions desired. The trial court can not be expected and is not required to instruct upon every possible question.

18. INSTRUCTIONS—Omission of—Request by Defendant. It is not error for the trial court to omit to instruct upon some particular branch of the case deemed advisable by the defendant upder his theory of the case, when he has not requested such instructions.

19. SPECIAL INSTRUCTIONS—Refused, When. Instructions Nos. 1 and 2 were fully covered by the instructions given by the court, and the court is not required to repeat the instructions given because requested by the defendant.

20. CRIMINAL TRIAL—Instructions—Confined to Evidence. Where in a criminal case the indictment charges, and the evidence for the prosecution shows the killing to have been manslaughter in the first degree, and the defendant admits the killing, and the evidence upon his part tends to show the killing to have been justifiable, it is only necessary that the instructions of the court shall cover the law of the case as shown by the evidence.

21. SAME. On the trial of a criminal case, where the defendant is charged with the crime of manslaughter in the first degree, and the evidence of the prosecution tends to support the charge, and there is no evidence tending to support the lower degrees of the crime, but the evidnce of the defendant tends to prove justifiable homicide, it is not necessary for the court to instruct the jury upon the law of manslaughter in the second degree.

22. SAME. The instructions should in all cases state the law applicable to the facts, and to all proper and reasonable deductions to be made therefrom, and fair interpretations thereof, and not to questions not presented or supported by the evidence.

23. APPEAL—Judgment not Disturbed, When. Where, after an examination of the entire record, it appears that the defendant has had a fair and impartial trial, that no material error has been committed by the trial court, and the verdict is amply sustained by the evidence, this court will not disturb the verdict or judgment of the trial court.

(Syllabus by the Court.)

*Error from the District Court of Caddo County; before F. E. Gillette, Trial Judge.*

*Stillwell H. Russell, Charles H. Carswell* and *Glitsch & Glitsch,* for plaintiff in error.

*P. C. Simons, Att'y Gen.,* for defendant in error.

Opinion of the court by

BEAUCHAMP, J.: Plaintiff in error, Samuel A. Robinson was indicted for, tried and convicted of manslaughter in the first degree, in the district court of Caddo county, and sentenced to the penitentiary for a term of eight years. From that judgment, he appeals and brings the case here by petition in error and case made.

After the return of the indictment by the grand jury and upon arraignment, the plaintiff in error moved the court to quash the indictment upon two grounds: First, that said indictment was found by the grand jury without legal and competent evidence; second, that the grand jury which found and returned said indictment during the consideration of the case received incompetent, illegal, hearsay and secondary evidence, and that the finding of said indictment was made upon incompetent, illegal, hearsay and secondary evidence. A hearing upon the motion was had before the court, and the motion overruled, to which ruling the plaintiff in error excepted, and now urges this as his first ground

as cause for reversal of the judgment against him. The record discloses that on the preliminary examination of the plaintiff in error the testimony was taken down in short hand by a stenographer, and afterwards by her transcribed, and that the testimony as written out by her was introduced before the grand jury while investigating his case; that the testimony of some of the witnesses who testified before the examining magistrate was not contained in the transcript and that the testimony contained in the transcript was not taken under the direction or order of the probate judge, before whom the examination was had, and that the transcript was not filed in the probate court, nor filed or deposited with the clerk of the district court of Caddo county. These are the grounds upon which the plaintiff in error relied to support his motion to quash. The record also discloses that a number of the witnesses who testified in person before the grand jury were eye witnesses to the homicide, and upon whose evidence, the grand jury were fully justified in returning the indictment.

It is contended that by reason of the grand jury having received the transcript in evidence before them that the indictment was not found as prescribed by the statutes of this Territory, and that by reason of the provisions of section 5399, Wilson's Statutes the indictment should have been set aside by the court. Section 5399, reads:

"The indictment must be set aside by the court, in which the defendant is arraigned, and upon his motion, in either of the following cases: First, where it is not found, indorsed, presented or filed, as prescribed by the statutes of the Territory. * * * *"

And by section 5339, W. S. it is provided:

"The grand jury may not receive hearsay or secondary evidence."

Section 5349 W. S. provides:

"An indictment cannot be found without the concurrence of at least twelve grand jurors. When so found, it must be indorsed 'A true bill' and the indorsement must be signed by the foreman of the grand jury."

The legislature has seen proper to provide for what causes an indictment must be set aside by the court upon the motion of the defendant, if made at the proper time, and by section 5349, the indictment can be found only by the concurrence of at least twelve grand jurors and when so found it is provided how it must be endorsed and signed. By the language contained in section 5399 "When it is not found" is meant when not concurred in by at least twelve grand jurors, and has no reference to the kind or character of evidence received by the grand jury or to the other matters or proceedings prior to the vote of the grand jury upon which the indictment is found. By the provisions of our criminal procedure, the rights of a defendant indicted are defined; and the causes for which he may attack the proceedings, the manner in which the attack must be made, and the time for making such attack, are prescribed, and the reception by the grand jury of hearsay or secondary evidence not being one of the grounds for which the indictment must be set aside upon motion, and the motion in this case being for that cause only, it was rightfully overruled. *Shivers v. Territory,* 13 Okla. 466.

2. The second assignment of error is that the court erred in overruling the challenge for cause made to the petit

juror, R. A. McCracken. The record discloses the following examination of the juror upon his *voir dire*.

"Q. Are you a deputy sheriff in this county?

"A. I have a commission. I am not a regular working sheriff.

"Q. You hold a commission as a deputy sheriff?

"A. Yes, sir.

"Defendant challenges juror for cause.

"Challenge is by the court overruled.

"Defendant excepts to ruling of the court."

and immediately following is the certificate of the official court stenographer as follows:

"This certifies that the above and foregoing is a true and correct transcript of my short hand notes of that part of the examination of juror McCracken relating to his having a commission as deputy sheriff, together with the objection of counsel, the ruling of court, and the exceptions of counsel to said ruling."

It is apparent that the record presented does not contain a complete record of the examination and testimony of the juror upon his *voir dire*. Under the provisions of the statutes of this Territory, a challenge for cause is an objection to a particular juror and is either: First, general, that the juror is disqualified from serving in any case on trial; or second, particular, that he is disqualified from serving in the case on trial. General causes for challenge are: First, conviction for felony; second, want of any of the qualifications prescribed by law to render a person a competent juror, including a want of knowledge of the English language as used by the courts; third, unsoundness of mind or such defect in the faculties of the mind or organs of the body as renders him incapable of performing the duties of a juror. Particular causes of challenge are of two kinds: First, for such a

bias as when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known as implied bias; second, for the existence of a state of mind on the part of the juror, in reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that he cannot try the issue impartially, without prejudice to the substantial rights of the party challenging, and which is known as actual bias. A challenge for implied bias may be taken for the several causes set forth in the statute, and for no other. In a challenge for either implied bias or actual bias the causes therefore must be stated. All challenges whether to the panel or to individual jurors shall be tried by the court. The juror and other witnesses may be examined to prove or disprove the challenge.

See Wilson's Statutes, sections 5469, 5470, 5471, 5472, 5473, 5474, 5475, 5476, 5477, 5478 and 5479.

The entire record of the examination of the juror not being before us, it is impossible for us to determine for what reason the court overruled the challenge for cause. Conceding for the purpose of this question that the juror, if a deputy sheriff, was incompetent to serve, it may be that if the record of the entire examination was before us, it would show that he was not in fact a deputy sheriff. The record presented simply discloses that the juror answered that he held a commission; that he was not a regularly working sheriff. What is meant by this particular language standing alone is not certain. Under the provisions of the statutes, more is required to constitute one a deputy sheriff than the mere issuance and delivery of a commission. Wilson's Statutes 3756.

However, under the statutes before cited, if the juror had been challenged on the grounds of incompetency, it was a

question to be tried by the court, and in the absence of a complete record the presumption would be that the ruling of the trial court was right. Again the challenge was general; for what cause is not shown. Under the provisions of the statutes the cause for the challenge shall be stated. Whether the challenge was overruled on the ground of insufficiency in form, or because unsupported by the evidence does not appear from the record; it is enough, however if the ruling can be sustained on either of these grounds.

In the case of *People v. Reynolds,* 16 Cal. 129 in the opinion of the court by Baldwin, J., it is said:

"The statute enumerates several distinct causes for which a challenge for implied bias may be taken, and requires, in a challenge of this kind, that one or more of the causes thus enumerated shall be alleged. (Act regulating proceedings in criminal cases, secs. 347, 349). Unless the cause be alleged, the challenge may be disregarded by the court. It is not enough to say: 'I challenge the juror for implied bias' and then stop. The particular cause from which such bias is to be inferred must be stated. Such was the rule of the common law and such is the direction of the statute in this state. In the present case, the challenges were interposed in general terms 'for implied bias' without a specification of the particular causes; and for this reason, if for no other, they were properly disallowed. 'When a juror is challenged for principal cause or for favor' says the supreme court of New York, in *Freeman v. The People,* 4 Denio 31, 'the ground of the challenge should be distinctly stated; for without this the challenge is incomplete, and may be wholly disregarded by the court. It is not enough to say: 'I challenge for principal cause or for favor' and stop there; the cause of the challenge must be specified."

"A party cannot," says the supreme court of New Jersey, in *Mann v. Glover,* 2 Green. 195, "make a principal challenge, or a challenge to the favor, by giving it a name. A challenge,

whether in writing or by parol, must be in such terms that the court can see, in the first place, whether it is for principal cause, or to the favor, and so determine by which form it is to be tried; and secondly, whether the facts, if true, are sufficient to support such challenge.

"It is the common practice in this state to interrogate a juror, when he is first called upon his *voir dire*, generally as to his qualifications, with a view to obtain information upon which to rest a specific challenge. This practice, though productive of some inconvenience, is one of necessity; for unless it be followed, it will often be quite impossible to ascertain the qualifications of the juror. * * * If, therefore, the challenge for implied bias be not taken before the juror is examined, the proper course to pursue is to make the challenge, stating distinctly its causes immediately after the preliminary examination is closed. The district attorney can then except to the challenge. or deny the facts it alleges; that is, he can demur to its sufficiency or join issues on the truth of its averments. If the latter course be adopted, and the matter be thus submitted to the court."

The statutes of California are identical with the statutes of this Territory. In the present case, the challenges were overruled, but whether on the grounds of insufficiency in form or because unsupported by the evidence does not appear. It is enough if the ruling can be sustained on either of the grounds. *People v. Cochran,* 61 Cal. 549 and cases there cited.

In the opinion in the case of *Johnson v. Holliday,* 79 Ind. 151 by Howk, J., it is said:

"Of course the appellant was entitled, as was the appellee, to a fair trial of the issues in the cause by a jury of competent jurors. But we cannot assume that any of the jurors were incompetent. On the contrary, as all of the presumptions are in favor of the rulings and decisions of the trial court, it behooves the party who may wish to claim in this court, that

any of those rulings or decisions were erroneous, to so save and present them in the record of the cause as to exclude every reasonable presumption in favor of such rulings or decisions. *Myers v. Murphy,* 60 Ind. 282; *Scott v. Smith,* 70 Ind. 298; *Bowen v. Pollard,* 71 Ind. 177; *Williams v. Potter,* 72 Ind. 354; *Kissell v. Anderson,* 73 Ind. 485; *Smith v. Kyler,* 74 Ind. 575."

In view of the condition of the record presented and the authorities cited, we cannot say that there was error committed in overruling the challenge for cause. A known ground of disqualification of the juror before or during the progress of a trial is waived by withholding it, or refusing or declining to raise the objection until after verdict. *Queenan v. Territory,* 11 Okla. 261.

3. At the trial, a witness Frank Sellers, testified that between 6 and 7 o'clock in the evening, just a short time prior to the homicide, he called at the old "K. C." building, and there found Smith Brown, the deceased; that Brown made a violent assault upon him, cursed him, charged him with being a spy for Robinson, and threatened to kill him and stated that he would kill the defendant Robinson, before daylight; that Brown at that time was armed with a revolver, with which he punched the witness in the side several times. The Territory objected to the testimony respecting the difficulty between the deceased and the witness. The court ruled that whatever the witness said in reference to Robinson was competent. The witness then testified in reference to the details of a fight that he had with the deceased, Brown, and thereafter, in response to an objection, the court instructed the jury that the testimony of the witness in so far as it related to what Brown did in reference to the witness was not competent, to which

the defendant excepted, and now complains.   Counsel argues
that:

"This brutal outburst constitutes a link in the chain of
one hostile series of acts by the deceased down to the time he
was shot.   It showed the state of his mind toward the defend-
ant, in this, his assault on Sellers and the language used to-
wards him was actuated solely from the fact that he regarded
Sellers as an emissary of Robinson, and that the excluded
testimony of Sellers shows that the deceased was armed with
a revolver about thirty minutes prior to the time he met his
death."

The testimony of the witness Sellers with reference to
Brown being armed with a revolver at the time of the difficulty
between himself and Brown was not excluded by the court.
The court only excluded the testimony with reference to the
details of the fight between witness and Brown, and in this
the court certainly did not err.   The witness was permitted
to testify to everything that was said or done with reference
to the defendant; and under what theory the details of a per-
sonal encounter between Sellers and Brown could be material
or relevant to the questions at issue we are unable to see, but
even if the ruling of the court was erroneous, two other wit-
nesses who were eye witnesses to the encounter between Sell-
ers and Brown were permitted to testify to all of the facts and
details.   Sellers testified that immediately after the encounter
with Brown that he told the defendant what Brown had said
to him and advised the defendant to look out for him; that he
believed that Brown would kill him before daylight if the
opportunity should present.   The defendant testified that
shortly after he received this information, he met the deceased
in what is called the Bell Top saloon in Anadarko, and in-
quired of him why he was abusing him to his friends; Brown

denied that he had made such statements, and inquired as to who was defendant's informant; upon being informed it was Sellers, Brown made the remark "That God damned son of a bitch I would not believe" to which remark, it seems defendant took offense, and the encounter ensued in which the defendant shot and killed the deceased, in the presence of witnesses who were present and testified to all of the details, at the trial. The defendant admitted the shooting, and claimed that Brown was in the act of drawing a revolver, and that he shot in self defense.      The record discloses that the court gave the defendant the greatest latitude in the introduction of evidence.

4.      Exceptions were taken to instructions Nos. 9, 10, 13, 14, and 19 given by the court, and while there was no exception taken to instruction No. 8, we are requested by counsel to notice it also, which instruction read as follows:

"8.      By the language 'lawful defense of the person,' is meant what we sometimes term 'self defense.'      The right of self defense is founded upon the natural right of a man to protect himself against the unlawful assault upon him by another.      This defense having been made in this case, the jury should weigh each fact and circumstance that is offered as justifiable grounds in connection with all the other testimony in the case.

"Mere apprehension that a person designs to kill another or to commit some great bodily harm upon him, is not sufficient to justify such other in first making an attack and committing the act complained of in the indictment herein; and to perform such act when the excuse therefor is mere apprehension, would not be sufficient to justify the act as one having been committed in the lawful defense of the person. In a case where a person attacks another or attempts to execute a design upon the life of such other and is in an apparent situation to do so, thereby creating a reasonable belief

that such design is about to be accomplished, then the person so threatened may resist and use all necessary force to prevent the accomplishment of such design, even to the extent of taking life, and it is justifiable.

"Actual or positive danger is not indispensible to justify self defense. The law considers that men, when threatened with danger, are obliged to judge from appearances and to determine therefrom the exact state of things surrounding them, and in such case, if a person acts from an honest conviction, induced by reasonable evidence, he will not be held criminally for a mistake as to the extent of actual danger.

"If the jury believe from the evidence that at the time the defendant is alleged to have shot the deceased, the circumstances surrounding him were such as in sound reason would justify or induce in his mind an honest belief that he was in danger of receiving from the deceased some great bodily harm, and that the defendant in doing what he did was acting solely from the instincts of self preservation, then he is not guilty, and you should so find.

"9.   The court instructs the jury that mere fear, however well grounded, that another intends to kill the defendant, or to do him some great bodily harm, will not justify a killing, unless there is some overt act indicating a purpose to immediately carry out such an intention, and you are instructed that it is not enough that the defendant should show that he believed himself in danger, unless the facts were such that in the light of all the facts and circumstances known to the defendant at the time or by him then believed to be true, the jury can see that as a reasonable man he had grounds for such belief.

"10.   In this connection you are instructed that no man by his own lawless act can create a necessity for acting in self defense and thereupon assault and injure or kill the person with whom he seeks the difficulty, and then interpose as a defense the plea of self defense. The plea of necessity is a shield only for those who are without fault in occasioning it and acting under it. * * *

"13.   The jury are instructed that if they find from the evidence that the deceased, C. S. Brown, made threats against the defendant which, if carried into execution, would endanger his life or subject him to great bodily harm, and the defendant feared or had reason to fear that such threats were liable to be carried into execution, then the defendant might lawfully arm himself for the purpose of self defense in anticipation of such threats being carried into execution: but you are instructed that the defendant could not lawfully assault the deceased on account of such threats or because of fear induced thereby, unless the deceased at the time made some demonstration or performed some overt act that caused reasonable apprehension that such threats were about to be put into execution, and in case of such demonstration or overt act the defendant might lawfully become the aggressor only to the extent of putting himself in a position of safety, as against the unlawful threatened acts of the deceased. If under the circumstances and facts in this case you find the defendant intentionally carried his act of aggression further than was reasonably necessary to place himself in a situation of apparent safety, his acts would be such as to render his act of aggression unlawful, and you should under such circumstances consider the evidence as a whole, together with such act of aggression in determining his guilt or innocence under the charge laid down in the indictment.

"14.   The court instructs the jury that words spoken, no matter how vile or opprobrious, unaccompanied by other demonstrations which would cause a reasonable belief in the mind of the defendant that the deceased was about to do him some great personal injury, would not justify the defendant in shooting the deceased or in inflicting on the deceased any personal injury. * * *

"19.   The court instructs the jury that the true nature of manslaughter is that it is a homicide mitigated out of tenderness to the frailty of human nature. Every man when assailed with violence or great rudeness is inspired with a

sudden impulse of anger, which puts him upon resistance before time for cool reflection; if during that period he attacks his assailant with a weapon likely to endanger his life and death ensues, it is regarded as done through heat of blood and violence of anger and not through malice. The same rule applies to a homicide in mutual combat which is attributed to sudden and violent anger occasioned by the combat, and not to malice. Where two meet not intending to quarrel and angry words suddenly arise and a conflict springs up, in which blows are given on both sides, it is a mutual combat, without much regard to who is the assailant, and if no unfair advantage be taken in the outset, and an occasion is not sought for the purpose of gratifying malice and one seizes a weapon and strikes a deadly blow, it is regarded as homicide in the heat of blood and under our statute is manslaughter in the first degree."

The criticism offered as to instruction No. 8 is as to the language used: "Sound reason" and "Honest belief." It is argued that "jurors might say that there was reason inducing belief, yet under the cue gathered from the instructions would easily conclude that the reason was not a sound one or the belief an honest one. Again—that the defendant in doing what he did was acting solely from the instincts of self-preservation, else he is guilty." The defendant on the witness stand admitted the killing and attempted to justify on the grounds of self defense and it was for the jury to determine in the light of all the facts and circumstances in evidence whether the defendant was justifiable, whether he was by the deceased assaulted in such a way as to induce in him a reasonable belief that he was in actual danger of losing his life, or of suffering great bodily harm, and that the defendant in doing what he did was acting solely from the instincts of self-preservation as claimed by him. The de-

fendant testified that he believed that the deceased was armed with a revolver, and that he was then about to shoot him, and that he shot the fatal shot because he believed that the deceased was then about to kill him and to preserve his own life. If the appearances were such, judging from the standpoint of the defendant that the jury could say that he had reasonable grounds for the belief that he was then in danger of losing his life or suffering great bodily harm, then they were told that they should acquit him, but the jury must of necessity believe that such a belief was an honest belief, not a mere claim of belief, and one for which under all of the facts and circumstancese in evidence, there was a reason for. The facts must be such that the jury in the light of all the facts and circumstances known to the defendant at the time and by him believed to be true, can say that as a reasonable man he had grounds for such belief. See *Wells v. Territory,* 14 Okla. 436. And the use of the language "Sound reason," "Honest belief," in connection with the instructions given, can only be understood to mean that the defendant must actually in good faith have thought he was in danger of losing his life or suffering great bodily harm, and that he had reason and cause for such belief.

Again it is said that:

"The instruction does not say to whom the danger, real or apparent, the sound reason, the honest belief, etc., should appear, and unless so instructed the jury has a right to conclude that these matters must be viewed from their standpoint."

The language of the instruction is:

"If the jury believe from the evidence that at the time the defendant is alleged to have shot the deceased the circum-

stances surrounding him were such as in sound reason would justify or induce in his mind an honest belief that he was in danger of receiving from the deceased some great bodily harm, and that the defendant in doing what he did was acting solely from the instincts of self-preservation, then he is not guilty."

What language could have been adopted or used by the court to more clearly direct them as to whom the danger should appear, we cannot perceive, for the language is plain and unambiguous, and expressly states to whom the reason and danger should appear.

The objections to instruction No. 9 are based upon the same line of reasoning and therefore require no further notice.

It is contended that instruction No. 10 is not applicable to the case made by the evidence, and is equivalent to saying to the jury "that the plaintiff in error created the necessity by his own lawless acts to produce a fear that his life was in danger by the deceased, and taking advantage of self defense made it a necessity to kill." This instruction given in connection with instruction No. 9 where the jury were told that the killing was justifiable if in response to some overt act. There is testimony in this case that the defendant just before the shooting occurred went to his saloon, armed himself with the revolver with which he fired the fatl shot, and went to the Bell Top saloon where he met the deceased and accused him of abusing him to his friends, and after but a few words fired the fatal shot. Under such circumstances the instruction was applicable to the facts. By instructions Nos. 16 and 17, the jury were told:

"16. The court instructs the jury that a man has the right to seek and ask an explanation of one who has made

threats about him, and if in so doing an affray is precipitated
he has the right to defend himself from death or great bodily
injury; and the jury are instructed that it is not necessary
in order that the defendant have the right of self defense
that he be entirely blameless in the matter of bringing on
the difficulty which resulted in the homicide.   The mere fact
that he armed himself for the purpose of self defense, if
you find from the evidence that the defendant did arm him-
self for that purpose, nor the fact that upon meeting the
deceased he accosted him and asked for an explanation from
him of the threats alleged to have been previously communi-
cated to him, the defendant, as having been made by the
deceased, unless you further find from the evidence that such
explanation was asked for the purpose and with the intent
on the part of the defendant of bringing on the difficulty
or conflict, and in such conflict to take the life of the de-
ceased, and if you do find   that  such  an explanation  was
asked for the purpose and with the intent of bringing on a
conflict intending in such conflict to take the life of the
deceased, such act on the part of the defendant, if followed
by a deadly assault on the part of the defendant, would ren-
der his act of aggression unlawful, and you should in such
case consider the  evidence taken  in this  case as  a whole,
together with such acts of aggression in determining the
defendant's guilt or innocence under the charge laid in the
indictment.

"17.   If the defendant was in a place where he had a
right to be and the deceased was making an effort to draw a
revolver for the purpose of shooting or killing the defendant,
and the defendant did not bring on the difficulty, and the
circumstances surrounding him,   in connection   with   any
threats theretofore made against him by the deceased, were
such as to induce in the defendant's mind a reasonable belief
that the deceased intended to shoot and kill him, and the de-
fendant did in fact so believe, then the defendant was not
obliged to retreat, nor consider whether he could safely re-

treat, but had a right to stand his ground, and meet any attack made upon him with a deadly weapon, in such way and with such force as under all the circumstances he at the moment honestly believed, and had reasonable grounds to believe, was necessary to save his own life, or to protect himself from great bodily injury; and if in such conflict between them, the defendant killed the deceased, the killing was justifiable, and it is your duty to find defendant not guilty."

Under the facts in evidence in this case, the jury would have been warranted in finding that the defendant went to the saloon where he found the deceased, in search of him, and for and with the purpose and intention of killing him, and there is no intimation or claim that he withdrew or attempted to withdraw from the fight. It cannot be contended that a man can deliberately arm himself with a dangerous weapon and seek out another for the purpose of killing him, unlawfully and deliberately, and be heard to claim the right of self defense, where he had not withdrawn or signified his intention or willingness to withdraw from the struggle. As was properly said by the trial court; "The plea of necessity is a shield only for those who are without fault in occasioning it and acting under it." The instruction when taken in connection with the other instructions given by the court fairly states the law applicable to the facts in this case, and could not be construed as assuming that the defendant created the necessity by his own lawless act to produce a fear that his life was in danger from deceased, and taking advantage of self defense made it a necessity to kill, as contended by counsel for plaintiff in error and therefore the instruction was not erroneous. *State v. Jones*, 78 Mo. 278.

Complaint is made of instruction No. 13, and it is argued "one acting in resistance to an overt act is not an aggressor,

but such resistance is a defensive act, and he has the legal right to proceed with such defensive acts until he is in a situation of actual safety not of apparent safety." The instruction is copied in full in this opinion, and we are unable to see any justification for this criticism. The jury were told that defendant could not lawfully assault the deceased on account of threats, or for fear induced thereby, unless the deceased at the time made some demonstration or performed some overt act that caused a reasonable apprehension that such threats were about to be put into execution; and in case of such demonstration or overt act, the defendant might lawfully become the aggressor only to the extent of putting him in a position of safety, and if he intentionally carried his act of aggression further than that, his acts would be such as to render his act of aggression unlawful and that the jury should under such circumstances consider the evidence as a whole, together with such act of aggression in determining his guilt or innocence; nor can the language used in the instructions when taken as a whole be construed as saying that the defendant carried his acts of aggression further than he should have. The instruction when taken as a whole is not open to the criticism offered, and fairly states the law applicable to the facts.

Exception was taken to instruction No. 14 given by the court which is assigned as error, but counsel in error in their brief assign no reason why such instruction should be held to be erroneous, and we know of no reason that could be successfully urged to that end. Counsel insists that two instructions requested by them and refused by the court should have been given in lieu thereof. The instructions requested and refused are fully covered by the instructions given. While

perhaps different to some extent in the language used the substance is the same. It. is not error for the court to refuse requests for instructions, even though such requests correctly state the law, where they are fully covered in the instructions given.

Instruction No. 19 was excepted to, and is now insisted upon as error. It is argued that "the vice in the instruction is: (1) It does not describe the character of the violence or of the blows; (2) it makes no difference as to who dealt the first blow following the words used; (3) it says that the law has no regard as to who dealt the first blow; (4) it does not explain or define what advantages would be unfair, in the outset, if nothing but words were used, and (5) because if the two men met not intending to quarrel and angry words suddenly arose, (and words not justifying an assault) it would not be a mutual combat if plaintiff in error simply defended himself from the attack of deceased; (6) in the opinion of counsel the law has regard as to who is the assailant, and (7) calling for an explanation was a legal right, and would not be 'an occasion sought for the purpose of gratifying malice.' "

For the reasons heretofore stated the instruction is applicable to the facts in this case. An instruction identical with this instruction was given in the case of *Commonwealth v. Webster,* 5 Cush. (Mass.) 295 and approved by the supreme court of Massachusetts. Counsel for plaintiff in error admits that the instruction properly states the law where applicable to the facts. If counsel desired an instruction describing the character of the violence, of the blows, and defining what advantages would be unfair in the outset, if nothing but words were used, and the other matters of which they complain, they

should have requested instructions covering those matters. The trial court could not be expected and is not required to instruct upon every possible question, and it is not error to omit to instruct upon some particular branch of the case deemed advisable by the defendant under his theory of the case, when the defendant has not asked for such instruction.

Complaint is made because of the refusal of the court to give defendant's instructions Nos. 1 and 2, which were requested by the defendant and refused. The instructions requested were fully covered in every particular by the instructions given, and even though the instructions requested correctly state the law, being fully covered by the instructions given, it was not error to refuse the requests. The court is not required to repeat the instructions given because requested by the defendant.

It is contended by counsel for plaintiff in error that the court erred in not instructing the jury on the law as to manslaughter in the second degree. As before stated the defendant admitted the killing and sought to justify on the grounds of self defense. He testified to previous threats made by the deceased, and communicated to him, and that at the time he fired the fatal shot he believed that the deceased was about to shoot him. Under the indictment and the evidence, the only question for the jury to determine, the shooting being admitted by the defendant, was whether he acted in self defense. The court fully instructed the jury as to manslaughter in the first degree, and as to the law of self defense applicable to the facts; and under the indictment and facts in evidence in this case, the defendant was either guilty of manslaughter in the first degree or not guilty. The defendant did not request the court to give an instruction as to manslaughter in the

second degree and it has been held by the former decisions of this court that it is not error to omit to instruct upon some particular branch of the case deemed advisable by the defendant under his theory of the case when the defendant has not asked for such instruction. If the defendant desired an instruction as to the lower degree of manslaughter, he should have asked the court to give such an instruction. Where the indictment charges and the evidence for the prosecution shows the killing to have been manslaughter in the first degree, and the defendant admits the killing, and the evidence upon his part tends to show the killing to have been justifiable, it is only necessary that the instructions of the court should cover the law of the case as shown by the evidence.

In the case of *New v. Territory*, 12 Okla. 172, the defendant was indicted, tried for and convicted of murder. The defendant admitted firing the fatal shot, but claimed that he was justified on the ground of necessary self defense. The court instructed the jury as to the law of murder and of self defense, but did not instruct the jury as to manslaughter in the first or second degrees, and no such instruction was requested by the defendant. In the opinion by Justice Pancoast, it is said:

"In the case at bar there was no instruction upon this point. The instructions of the court simply covered the law of murder, nor did the defendant ask for any instructions covering the law of manslaughter in any degree. We think the plaintiff in error has not properly raised this question. If the defendant was entitled to instructions upon this point he should have asked the court below to instruct the jury upon the law of manslaughter, and in the absence of such a request, it was not error for the court to omit to give such instructions. It is true that the court should instruct the jury upon all

questions involved in the case, but when the court has covered the case with general instructions it is not error to omit to instruct upon some other particular branch of the case deemed advisable by the defendant under his theory of the case when the defendant has not asked for such instructions." *Lovett v. State*, 30 Fla. 102; *Kellogg v. State* (Colo.) 29 Pac. 805; *State v. Estepp* (Kans.) 24 Pac. 986; *State v. Hendricks*, 4 Pac. 1050."

Under the authority of the case of *New v. Territory, supra,* and the authorities there cited, the failure of the court to instruct the jury as to the law of manslaughter in the second degree was not error. Having noticed and considered all of the assignments of error contained in the petition in error and argued by counsel for plaintiff in error, and from a careful examination of the record in this case, we find no error that will justify a reversal.

The judgment of the district court of Caddo county is therefore affirmed, and ordered to be at once carried into execution with costs to plaintiff in error.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.