(86 Tex. Cr. R. 276)

**JOHNSON v. STATE.    (No. 5368.)**

(Court of Criminal Appeals of Texas.    Nov. 26, 1919.)

1. HOMICIDE ☞142(1)—ISSUES OF MURDER, MANSLAUGHTER, AND SELF-DEFENSE.

In a prosecution for murder, contentions of the state and defendant *held* to present the issues of murder, manslaughter, and self-defense.

2. HOMICIDE ☞309(1) — INSTRUCTION ON MANSLAUGHTER.

In prosecution for murder, wherein defendant's testimony presented the issues of manslaughter and self-defense, in that the person he killed and another, acting together, attacked him, excerpt from a charge on manslaughter that the offense was of such grade if defendant killed when assaulted, believing that both decedent and the other attacking person were acting together, etc., *held* proper.

3. HOMICIDE ☞309(1) — INSTRUCTION ON MANSLAUGHTER.

In a prosecution for murder, wherein defendant testified that the killing was either manslaughter or in self-defense because he was attacked both by the person killed and another, an excerpt from a charge on manslaughter, that the killing was of such grade, if decedent and the other had combined, and the defendant believed they had, to do defendant some injury, and the conspirator with decedent had given the latter a knife to use against defendant, *held* not erroneous, as unduly limiting reduction of the offense to manslaughter only by an attack on defendant from both decedent and the other.

4. CRIMINAL LAW ☞822(17)—WHOLE CHARGE TO DETERMINE ERROR IN PART.

A whole charge, as one on manslaughter in a prosecution for murder, must be looked to

in determining whether it is erroneous on account of a particular part.

5. CRIMINAL LAW ☞822(17) — INSTRUCTION ON MANSLAUGHTER.

In a prosecution for murder, defendant seeking to reduce the offense to manslaughter on the theory that he was attacked by decedent and another, one or both, general charge on manslaughter, construed as a whole, *held* to present the issue in such manner as not to injure defendant by limiting reduction of the offense to manslaughter only if defendant was attacked by both decedent and the other, not by one alone; the parts complained of not fairly presenting their relation to the general charge.

6. CRIMINAL LAW ☞1059(2)—EXCEPTION INSUFFICIENT BECAUSE TOO GENERAL.

The ground of exception that the court did not allow defendant sufficient time to review a charge after it was written and before being read to the jury, reciting that the charge was handed to defendant's counsel at 11 o'clock in the evening, and that they were given until 8:45 the next morning to examine it, *held* insufficient, as too general.

7. CRIMINAL LAW ☞1092(11), 1115(2)—EXCEPTION TO REFUSAL TO QUASH VENIRE INSUFFICIENT AS QUALIFIED.

In a prosecution for murder, denial of defendant's motion to quash the venire on various grounds *held* not to present error or require revision, in view of the bill of exceptions merely repeating some of the grounds of the motion but containing no facts and not showing what evidence was introduced in regard to the matter, and in qualification thereto by the court.

8. CRIMINAL LAW ☞597(1)—DENIAL OF CONTINUANCE FOR ABSENCE OF WITNESSES.

In a prosecution for murder, denial of continuance for the absence of the witness stabbed by defendant at the time of the killing *held* not error, the facts expected to be proved by such witness on the face of the record not probably being his testimony.

9. CRIMINAL LAW ☞598(2) — NO CONTINUANCE FOR ABSENCE OF WITNESSES UNLESS DILIGENCE IS USED.

Continuance was properly denied on account of the absence of witnesses to procure whose attendance or depositions defendant did not exercise sufficient diligence.

10. CRIMINAL LAW ☞938(3)—NEW TRIAL DENIED FOR EVIDENCE NOT NEWLY DISCOVERED.

In a prosecution for murder of defendant's mistress, new trial was properly refused when asked on account of newly discovered evidence of the city marshal that decedent was a mean and vicious woman, who had previously attacked defendant two or three times, as such evidence could not be newly discovered so far as defendant was concerned.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Henry Johnson was convicted of murder, and he appeals. Affirmed.

E. A. Berry, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of murder, his punishment being assessed at 20 years' confinement in the penitentiary.

The evidence is to the effect that appellant and deceased, a woman, had been living for several years in adultery, and had had a number of serious troubles; that she had on more than one occasion used a knife upon him, and once had struck him on the leg with an axe. She seems to have been, from the testimony, a woman of unusual high temper and of decided physical courage. We deem it unnecessary to go into a detailed statement of the troubles occurring between appellant and deceased.

Shortly prior to the homicide the deceased had taken up with another negro by the name of James Riley. This was rather displeasing to appellant. On the evening preceding the fight at night appellant claims he gave his mistress some money, or bought her a pair of shoes to attend some character of church gathering. Without his knowledge, as claimed by him, she went to a dance, in the country two or three miles, with James Riley. Appellant says he was not aware of that fact, and thought she was at the church social. He went also to the dance. Upon reaching there he found the deceased and Riley present. Shortly afterward a difficulty occurred, in which appellant stabbed Riley and killed deceased.

[1] The state's theory of the immediate transaction was that Riley was sitting or standing near a piano in the room, which was being played for the benefit of the dancers. Appellant approached Riley and engaged him in conversation; brought on a difficulty with and stabbed him; that deceased ran out of the door, followed by appellant. As appellant went out upon the gallery, or just off the gallery, he encountered deceased, and immediately attacked and killed her. Appellant's theory was that the deceased had a knife or went to where Riley was, and Riley gave her a knife, which he observed, and he went over and asked Riley why he gave deceased that knife; that he knew that she intended to kill him with it; that Riley called him a liar and struck him, and the fight began. His further contention is that while he and Riley were engaged in this trouble deceased ran up behind him, and was striking him in the back, as he thought, with a knife, and that the fight continued until they passed out of the door and on to the gallery, and perhaps the ground, and that he killed deceased under those circumstances. This presents the issues of murder, manslaughter, and self-defense.

[2] Some of the language of the charge on manslaughter is made the subject of criticism in appellant's exceptions. Among other things in the charge on manslaughter the court gave this:

216 S.W.—13

"An 'assault and battery by the deceased, Tennessee Kitchens, and James Riley, or either of them, provided the defendant believed they both were acting together and causing pain or bloodshed, provided such assault occurs at the time of the killing, or so near the time that the party receiving such assault and battery would not have time to be capable of cool reflection."

This is an excerpt from the charge and made the subject of exception. The exception, specifically pointed out, is to the language as follows: "Provided the defendant believed they both were acting together and causing pain or bloodshed." His proposition is that, if either of them were acting alone and causing pain or bloodshed, defendant's right of self-defense would be just as complete on the ground of manslaughter as if he believed they both were acting together. Appellant's whole theory of the case is based upon the idea that the two, Riley and deceased, were attacking and fighting him in the dance room near the piano. The issues are sharply drawn. The state's theory did not present the issue of manslaughter from any angle of view as we understand this record. So it may be stated that any question of manslaughter suggested was from the testimony introduced by the defendant, to wit, that they were both acting together, in their attack on him. The court, however, in quotation above criticized, authorized manslaughter if either was so attacking appellant.

[3-5] There is also an exception to another portion of the court's charge on manslaughter. That phase of the charge reads as follows:

"That the deceased and James Riley had combined, if they had, or if the defendant believed they had, to do the defendant some bodily harm, or kill him, and that Riley had given the deceased a knife to cut the defendant with."

The reason given is that—

"Said second section would be just as complete in favor of defendant without the necessity of Tennessee Kitchens and James Riley acting together and without defendant having to believe they were acting together, and such defense was complete without the necessity of defendant having to believe that James Riley had given Tennessee Kitchens a knife, if defendant believed that she had a knife, whether it was given to Tennessee Kitchens by James Riley or not."

The same may be said of this as of the other, and possibly both, that they were short excerpts from the charge on manslaughter, based upon the idea that these excerpts were erroneous. As before stated, the whole theory of the defense was manslaughter and self-defense from the standpoint of an attack on him by both. If they in fact attacked appellant, or appellant believed that both of them were attacking him, he had the same right to defend from either standpoint; but,

further, as to both of these exceptions, it may be stated they are but short extracts from the body of the charge, without showing the relation of the particular excerpts to the full charge as given. The rule is that the whole charge must be looked to in discussion of the question of error. We are of opinion that in the face of these exceptions that the charge is sufficient on the question about which it was given. If we look to the state's testimony, there was no attack made on appellant by the deceased. The state's contention is that appellant made the attack on Riley, and not Riley upon him, and such testimony is rather strong on this proposition. But from any viewpoint of the exceptions, we are of opinion there is no error shown; that the two excerpts from the charge contained in the exceptions do not fairly present their relation to the general charge. We think the general charge on manslaughter, when looked to in the face of these exceptions, presents the issue in such manner as that appellant was not injured.

[6] There is another ground of exception stated in the bill, that is, that the court did not allow appellant sufficient time to review the charge after it was written and before being read to the jury. It recites that the charge was handed appellant's counsel at 11 o'clock in the evening, and they were given until 8:45 the next morning to examine the charge. This is rather too general, and does not show in any manner or point out how he was injured by not being given further time. This is but a general statement, without specifying the injury. We do not think this was sufficient.

[7] Appellant moved to quash the venire, alleging various grounds. The bill of exceptions in this respect is a repetition of some of the grounds of the motion to quash, but contains no facts, nor does it show what, if any, evidence was introduced in regard to the matter. The court signing the bill of exceptions states that all of the venire were in court, except "such as had been excused by legal excuses, or some sick, except four or five men, and these were challenged by the state." Without the facts before us, and this qualification by the judge, there is nothing presented in such tangible way as presents error or requires revision.

[8, 9] Appellant filed an application for a continuance for several witnesses. One of these was James Riley. Process had not been issued for him as we understand the application; the excuse being that he was temporarily absent from the state, and information led counsel to believe that he was in New Orleans, La. In the contest filed by the state it was alleged that he had been placed in the army under the selective draft system. The facts expected to be proved by Riley, in the face of this record, would hardly be testified to by him as stated. He was the man engaged in the difficulty with appellant, and was stabbed during the mêlée. This phase of the application for continuance, we think, does not present merit. In regard to the other witnesses, the diligence we think is insufficient. They lived in the county; some of them either in the town of Lufkin or near by, and could have been reached in a few hours. Without discussing the diligence, we think it was insufficient as to all of the witnesses. Viewed in the light of the motion for a new trial, the court we think did not err in overruling the application for continuance. The contest by the state shows they lived near the town of Lufkin, where the case was tried and could have been obtained, and especially the affidavits and statements of these witnesses could have been secured for new trial to show they would testify as to the facts stated in the application. The contest further shows they would not have so testified, and states the reasons, facts, and circumstances. The affidavit of none of these witnesses is appended to the motion for new trial, nor was their testimony before the court on trial of the motion, so far as the record shows. Whether there was evidence introduced on the contest of the motion for new trial is not shown further than the general statement that the court heard the motion and the evidence and overruled it. The bill of exceptions does not undertake to show any of these matters, nor in fact was there an exception reserved to the overruling of the motion for new trial embodying this statement or evidence if it was introduced.

[10] The affidavit of a Mr. Cochran is attached to the motion for new trial on the theory that his statement would be newly discovered evidence. Appellant swearing to his motion for new trial fails to state this evidence was unknown to him, and the record shows that he either knew or could have known, and doubtless did know, the facts stated by Mr. Cochran in his affidavit. Cochran was foreman of the grand jury which returned the bill of indictment; he had been city marshal of Lufkin for a number of years, and evidently a prominent citizen. Some of the facts stated in the affidavit of Cochran are to the effect that deceased was a mean and vicious woman, and had attacked appellant two or three times, and had paid fines imposed for such conduct. This could not be newly discovered evidence so far as defendant was concerned. Take this record in its entirety, and in view of the attacks made by the motion for new trial, and the exceptions and the motion for new trial, we are of opinion there is no sufficient error urged that would require a reversal.

The judgment is affirmed.