[Crim. No. 1223. Second Appellate District, Division One.—October 30, 1925.]

## THE PEOPLE, Respondent, v. EDGAR J. KNOX, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT — USE BY DEFENDANT OF MONEY EMBEZZLED—ADMISSIONS—EVIDENCE—PROPER CROSS-EXAMINATION. In a prosecution for embezzlement, if the defendant, while testifying, admits that he used the money alleged to have been embezzled for his own personal uses, it is competent for the district attorney, on cross-examination, to elicit from defendant an admission that he owed a hotel a certain sum for personal expenses, and had issued a check for the amount, which check he took up with a portion of the money received from the complaining witness, where there is nothing either in the questions asked or answers given on the subject, that can be construed as indicating that defendant had committed a public offense in connection with either the issuing of the check to the hotel or in its payment.

[2] ID.—APPROPRIATION OF MONEY UNDER FALSE CLAIM OF TITLE— GOOD FAITH—EVIDENCE.—In such a prosecution the question as to whether or not the defendant appropriated the money "openly and avowedly, and under a claim of title preferred in good faith," within the meaning of section 511 of the Penal Code, was one for the jury, and there was sufficient evidence in the record to justify the inference which must have been drawn by the jury that the

2. See 10 Cal. Jur. 267.
5. See 8 Cal. Jur. 314; 14 R. C. L. 752.

defendant did not appropriate said money "openly and avowedly, and under a claim of title preferred in good faith."

[3] ID.—USE MADE OF MONEYS—OTHER OFFENSES—EXAMINATION OF DEFENDANT—MISCONDUCT OF DISTRICT ATTORNEY.—In this prosecution for embezzlement, prejudicial misconduct may not be predicated upon the action of the district attorney in questioning the defendant as to the specific use made by him of the money received from the complaining witness, which resulted in the testimony that the defendant had used a portion of this money to take up a check he had issued to a hotel, on the asserted ground that in pursuing this line of questioning, defendant was forced to admit that he had committed some other crime, where the record does not justify such a deduction.

[4] ID.—RELEVANCY OF EVIDENCE—ARGUMENT OF DISTRICT ATTORNEY—ABSENCE OF ERROR.—In such prosecution where, during a discussion between counsel and the court as to the relevancy of certain evidence which the district attorney was endeavoring to elicit from the defendant on cross-examination, the district attorney stated that "If I can establish he [defendant] had no source of income at that time, that he was simply living by virtue of his wits, I think the jury has a right to know that," assuming that it was intended by the district attorney and interpreted by the jury as meaning that the defendant was making his living by obtaining money improperly from other persons, it cannot be said that the trial court erred in failing to instruct the jury to disregard said remark, where there was nothing in the record which discloses that the remark was not pertinent to the question under discussion, or that it was made in other than a fair manner of argument, and the inquiry, as well as the evidence resulting from the line of questioning, was proper.

[5] ID.—INSTRUCTIONS—MATTERS COVERED BY OTHER INSTRUCTIONS.—In such prosecution, the trial court did not err in refusing certain instructions requested by the defendant which simply elaborated in some detail the general principle set forth in other given instructions covering the subject of reasonable doubt and the duty of the jury in weighing and considering the evidence.

[6] ID. — DISTINCTION BETWEEN GRAND LARCENY, OBTAINING MONEY UNDER FALSE PRETENSES AND EMBEZZLEMENT — EVIDENCE — VERDICT.—In such prosecution, the trial court did not err in giving three instructions dealing with the subjects of grand larceny, obtaining money by false pretenses and embezzlement, respectively, without distinguishing between the several crimes, where said instructions correctly stated the law on said subjects and the jury showed unusual discernment in applying the rules laid down by

the court's instructions in arriving at its verdict convicting the defendant of embezzlement, as each essential element in the crime of embezzlement was abundantly supported by the evidence.

---

(1) 16 C. J., p. 596, n. 59; 20 C. J., p. 436, n. 68, p. 482, n. 39, p. 484, n. 51, 53. (2) 20 C. J., p. 486, n. 60, p. 487, n. 65, p. 488, n. 71. (3) 16 C. J., p. 596, n. 59. (4) 16 C. J., p. 892, n. 94. (5) 16 C. J., p. 988, n. 80, p. 1005, n. 59, p. 1063, n. 85. (6) 17 C. J., p. 348, n. 85, 87; 20 C. J., p. 492, n. 3.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Schenck, Silverstein & Hanley and Paul W. Schenck for Appellant.

U. S. Webb, Attorney-General, Erwin W. Widney, Deputy Attorney-General, and Hamish B. Eddie for Respondent.

HAHN, J., *pro tem.*—This is an appeal from a judgment of the court upon a verdict of the jury finding the defendant guilty of the crime of embezzlement. An information filed by the district attorney of Los Angeles County charged the defendant and appellant herein, Edgar J. Knox, with embezzlement in count one and grand larceny in count two. Appellant was acquitted on the charge of grand larceny, but was found guilty on the count of embezzlement.

In urging a reversal of the judgment the appellant admits that under the rule of "conflict of testimony" this court will not disturb the finding of the jury; but he contends that the testimony in the case is so strongly in his favor that the court in reviewing the points he raises should apply the doctrine of the "close case."

We have carefully examined the transcript of the evidence and are moved to observe that if the complaining witness' testimony was given full credit by the jury, as undoubtedly it was, it cannot be said that this is what may be termed a "close case."

The complaining witness, Alice M. Bright, testified that in November, 1924, the defendant, with whom she had a limited acquaintance, approached her with the statement that he

knew where he could purchase for her some lots in a new subdivision, known as the Pico Vista Tract, at a discount of twenty per cent from the market price. Subsequently the defendant took Mrs. Bright out and showed her certain lots which he represented to her to be the lots which he had in mind and which could be purchased for $1,500. Relying upon these representations, the complaining witness gave the defendant, first, a check for $150 and, a few days later, another check for $1,350, to be used in acquiring these lots for her. At the time she delivered the $1,350 check, according to her testimony, she asked the defendant what she was to receive as evidence that she had given him this money, and he replied that he would give her his note, which he proceeded to do, for the sum of $1,500. She also testified that subsequently she asked the defendant for a contract which she understood was always given in the purchase of property, and that the defendant on one occasion had replied that he never gave any contract to the people for whom he invested money. Subsequently, according to the testimony of the complaining witness, the defendant told her, in response to her inquiry about the lots, that he had sold them and made a profit of $300 for her; that the money was in escrow in the Security Trust and Savings Bank and would soon be paid to her; that although she made repeated requests thereafter for her money, she had never been able to obtain it.

One Thomas B. Leddy, an attorney at law, testified that Mrs. Bright, the complaining witness, had consulted him with regard to the money she had turned over to the defendant, and requested him to represent her in securing its return; that pursuant to this employment he took the matter up with the defendant, and in one interview with the defendant in the witness' office, the defendant admitted that he had received $1,500 from Mrs. Bright for the purpose of purchasing some property, but that he had never purchased the property with the money.

The defendant, taking the stand in his own behalf, admitted that he had secured $1,500 in two checks from the complaining witness, but contended that it was money which he borrowed from her, and insisted that the note which he gave her was for the purpose of evidencing a loan which she had made to him. For the purpose of our discussion, it may

be said that the defendant denied substantially all of the other material assertions made by the complaining witness, and also denied that he had admitted to Thomas B. Leddy, as testified to by him, that he had received the money from the complaining witness for the purpose of buying property and that he had not purchased the property.

The fact that the defendant gave and the complaining witness accepted a note for $1,500 at the time the second check was given is pointed out by the appellant as a strong circumstance in support of his contention that the evidence in the case is very close. As further supporting the defendant's story that the transaction was a loan, it is urged that after receiving the note the complaining witness endeavored to discount the note at a bank.

Manifestly, if the jury believed the defendant's story, namely, that the transaction was a loan, there would have been no verdict of guilty, and all that is urged by the defendant here would be entitled to weight; but, unfortunately for the defendant's position, the verdict necessarily presupposes that the jury did not believe his story, but accepted the story of the complaining witness. The jury may very well have construed the giving of the note by the defendant as a bit of sharp practice indulged in for the purpose of covering up any indication of criminal intent, and may likewise have interpreted the action of the complaining witness in accepting the note as due to her inexperience in business; for manifestly the record in the case clearly shows that the complaining witness was inexperienced, if not unfamiliar, with business transactions of this kind.

[1] The first point urged by appellant is that the court committed prejudicial error in overruling the objection of his counsel to certain questions asked by the district attorney of the defendant while on the stand, concerning the use which he had made of the $1,500 secured by him from the complaining witness. At the outset of his testimony while on the stand the defendant frankly admitted that he used this money for his own personal uses. Upon cross-examination, and over the objection of defendant's counsel, the district attorney elicited from the defendant a statement or admission that he owed the Alexandria Hotel the sum of $600 for personal expenses, and had previously issued a check

for this amount, which check he took up with $600 of the money received from Mrs. Bright. Appellant urges that this information, which was in effect forced from the defendant by the questions of the district attorney, was for the purpose of showing "the commission of another offense" by the defendant, and that this was improper and prejudicial. We are unable to find anything in the record, either in the questions asked or answers given on this subject, that could possibly be construed as indicating that the defendant had committed a public offense in connection with either the issuing of the check to the Alexandria Hotel, or in its payment. Appellant admits that in a case of embezzlement it is a proper line of inquiry to ascertain what use was made of the money claimed to have been embezzled, but urges that when the defendant admitted he made personal use of the money, the district attorney had no right to make specific inquiry as to the particular uses.

We cannot agree with the appellant in this criticism. Once conceded that the inquiry was proper, the district attorney had a perfect right to elicit specific information instead of being satisfied with a general admission. (*People* v. *Rowland,* 12 Cal. App. 6 [106 Pac. 428]; *Dimmick* v. *United States,* 135 Fed. 257 [70 C. C. A. 141]; *Bridges* v. *State,* 103 Ga. 21 [29 S. E. 859].)

[2] The next point urged is that the evidence does not support the charge of embezzlement under the provisions of section 511 of the Penal Code of the State of California. The portion of the section which appellant contends is applicable to this case reads as follows: "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. . . . "

Appellant's contention is based upon the theory that, inasmuch as he testified that the transaction wherein he secured the $1,500 from the complaining witness was a loan, or that he believed it was a loan, even though mistaken as to the legal effect of the transaction, such asserted circumstances bring him within the provisions of the section of the Penal Code above quoted. The question as to whether or not the defendant appropriated the money "openly and avowedly,

and under a claim of title preferred in good faith" was one for the jury, and there can be no doubt but that there is sufficient evidence in the record to justify the inference which must have been drawn by the jury that the defendant did not appropriate the $1,500 in question "openly and avowedly, and under a claim of title preferred in good faith."

[3] Appellant urges also misconduct on the part of the district attorney as being prejudicial to his interests and of such a character as to justify a reversal of the judgment. It is contended that the district attorney's questioning of the defendant while on the stand as to the specific use made by him of the money received from the complaining witness, resulted in the testimony that the defendant had used $600 of this money to take up a check he had issued to the Alexandria Hotel. It is urged that in pursuing this line of questioning, the defendant was forced to admit that he had committed some other crime. In discussing one of the previous points made by the appellant, we have indicated that we do not believe the record justifies such a deduction, and hence if the line of questioning was proper, as we have held, there could have been no misconduct on the part of the district attorney in asking the questions referred to.

[4] During a discussion between counsel and the court as to the relevancy of certain evidence which the district attorney was endeavoring to elicit from the defendant on cross-examination, the district attorney used the following language: "If I can establish he had no source of income at that time, that he was simply living by virtue of his wits, I think the jury has a right to know that." Appellant's counsel objected to the use of the clause "simply living by virtue of his wits," and requested the court to instruct the jury to disregard the same. The use of this language and the failure of the court to give a specific instruction is assigned as prejudicial error. The phrase in question is subject to various interpretations; but assuming that it was intended by the district attorney and interpreted by the jury as meaning that the defendant was making his living by obtaining money improperly from other persons, this was the very crux of the case on trial, and in the argument upon any point raised as to the competency or relevancy of the evidence it

could not be said to be improper if the district attorney frankly states his reason why certain evidence should be admitted. There is nothing in the record which discloses that the remark was not pertinent to the question under discussion, or that it was made in other than a fair manner of argument; and, as we have already held, the inquiry, as well as the evidence resulting from the line of questioning, was proper.

[5]   Appellant also urges that error was committed by the court in refusing to give to the jury certain instructions requested by the defendant. These instructions simply elaborated in some detail the general principle set forth in other instructions covering the subject of reasonable doubt and the duty of the jury in weighing and considering the evidence. Such amplification is not necessary, and failure to give the requested instruction is not error.

[6]   The last point urged for a reversal arises out of three instructions given by the court, dealing with the subjects of grand larceny, obtaining money under false pretenses, and embezzlement. These instructions give the definition of each of the crimes noted and lay down the rules to be applied by the jury in distinguishing between the several crimes. Counsel for appellant suggests that "the difference between the three offenses should have been clearly stated without confusion, . . . " The instructions under criticism unquestionably state the law on the subjects involved. That some confusion may have arisen in the minds of the jurors in attempting to understand and apply the rules laid down in these instructions is quite possible. In fact, briefs filed in this court by eminent counsel would indicate that members of the bar frequently have difficulty in noting the demarcation between grand larceny, obtaining money under false pretenses and embezzlement, and that confusion in dealing with these subjects is not limited to the lay mind. In the instant case a careful examination of the evidence leads us to suggest that the jury showed unusual discernment in applying the rules laid down by the court's instructions in arriving at its verdict, for each essential element in the crime of embezzlement has abundant evidence in the record to support it.

For the reasons indicated, the judgment and the order of the court denying appellant's motion for a new trial are affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 28, 1925.

Myers, C. J., and Lennon, J., dissented.