## STATE, Respondent, v. JOHN JURKO, Appellant.

[245 Pac. 685.]

CRIMINAL LAW—HOMICIDE—PLEA OF SELF-DEFENSE—INSTRUCTIONS—
BURDEN OF PROOF—DISREGARD OF TECHNICAL ERRORS.

1. Question of error in refusing to strike testimony is not before the reviewing court; exception not having been taken and saved.

2. Evidence *held* sufficient to establish deliberation and premeditation.

3. Instruction defining justifiable homicide in language of C. S., sec. 8219, with "also" omitted is proper; "also" referring back to sections 8217, 8218, defining excusable homicide and justifiable homicide by an officer, and no evidence requiring those sections to be given in instructions.

4. For instruction to quote C. S., sec. 8220, as to fear of the commission of any of the offenses mentioned in certain subdivisions of section 8219, not justifying homicide, omitting words "of any" does not change its meaning, and so is harmless; all of section 8219 being set out.

5. It is the province of the jury, in finding the facts, to determine the legal effect of the evidence.

6. Except, at most, on a strained construction, instruction *held* not to advise that plea of self-defense could not be maintained if defendant was the first aggressor, even though he was thereafter compelled to act in self-defense.

7. All of the instructions must be read and considered together.

8. Instruction only suggesting law applicable if certain facts be found does not invade jury's province.

9. Defendant must have had an honest belief in necessity of taking life that plea of self-defense may be available.

10. For self-defense, the circumstances must have been such as to impress a reasonable man with necessity to take life.

11. All objection to use of words "clearly indicative," in instruction on self-defense, relative to intent of deceased was removed by other instruction.

12. If instructions as a whole are substantially correct, and jury could not have been misled to defendant's prejudice, giving erroneous instruction is not error.

13. Instruction which requires defendant, on commission of homicide by him being proved, to produce such evidence as will create in jury's minds reasonable doubt of his guilt, correctly states the law, and does not shift burden of proof.

14. The appellate court should, under C. S., secs. 9084, 9191, as evidently intended, disregard technical errors not affecting substantial rights.

15. Instructions, though, when read alone, not accurately stating the law, do not constitute reversible error, where, in the light of the entire charge, they are not inconsistent, prejudicial or misleading.

16. Where instructions may be reasonably and fairly harmonized, it will be assumed the jury considered them as a whole, rather than an isolated portion.

17. Instructions given having fairly and fully stated the law applicable to the facts, refusal of others was not error.

18. In the absence of request for charge that all the instructions should be considered and construed together, failure to give it is not error.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. William A. Babcock, Judge.

Publisher's Note.

1. See 2 R. C. L. 92.

2. See 14 R. C. L. 817.

9. See 13 R. C. L. 815.

See Criminal Law, 16 C. J., sec. 2274, p. 922, n. 3; sec. 2290, p. 929, n. 86; sec. 2331, p. 952, n. 16; sec. 2466, p. 1031, n. 89; sec. 2491, p. 1049, n. 72; sec. 2492, p. 1049, n. 78; sec. 2493, p. 1049, n. 82; p. 1050, n. 83, 84; sec. 2498, p. 1056, n. 20; 17 C. J., sec. 3342, p. 77, n. 34; sec. 3688, p. 339, n. 64; sec. 3703, p. 347, n. 77; sec. 3706, p. 349, n. 93; sec. 3709, p. 352, n. 61; sec. 3751, p. 368, n. 5.

Homicide, 30 C. J., sec. 230, p. 60, n. 79; sec. 352, p. 142, n. 83; sec. 538, p. 294, n. 96; sec. 553, p. 306, n. 83; p. 307, n. 87; sec. 590, p. 336, n. 79; sec. 616, p. 365, n. 85; sec. 623, p. 376, n. 66.

Judgment of conviction of murder in the first degree and sentence of death. *Affirmed.*

W. P. Guthrie, Homer C. Mills and Delana & Delana, for Appellant.

It is reversible error in an instruction to declare the legal effect of certain portions of the evidence. (*State v. Dunlap,* 40 Ida. 630, 235 Pac. 432.)

It is reversible error to fail to instruct the jury that all instructions contained in the charge of the court should be considered and construed together. (*State v. Dunlap, supra.*)

The jury should have been instructed that the mission of the appellant and his wife to interview the deceased at the time of the killing if the jury believed it to be in good faith and for the purpose of protecting appellant's wife from further annoyance, was lawful and proper. (*People v. Williamson,* 6 Cal. App. 636, 92 Pac. 313.)

The court was requested to charge the jury that defendant was a competent witness in his own behalf, and that he should be treated and subjected to only the same tests as were legally applied to the other witnesses. In *People v. Archibald,* 258 Ill. 383, 101 N. E. 582, the court held that this instruction was a correct statement of the law, and that it was error to refuse to give it.

The evidence of threats was certainly admitted for a purpose and the jury should have been clearly instructed as to the intended purpose. (*State v. Nicola,* 169 Iowa, 171, 151 N. W. 70, at 72; *People v. Zigouras,* 163 N. Y. 250, 57 N. E. 465.)

No matter how incredible the defendant's testimony is, he is entitled to instructions on the hypothesis that his testimony is entirely true. (*People v. Keefer,* 65 Cal. 232, 3 Pac. 818; *People v. Williamson,* 6 Cal. App. 336, 92 Pac. 313.)

Instruction No. 14 cut the appellant off from all right of self-defense. (*Pratt v. State,* 50 Tex. Cr. 227, 96 S. W. 8;

*Franks v. State,* 47 Tex. Cr. 638, 88 S. W. 923; *Christian v. State,* 46 Tex. Cr. 47, 79 S. W. 562.)

The court in instruction No. 18 placed the burden of proving the issue of self-defense upon the defendant; the giving of such instruction was vicious and erroneous. (*Price v. State,* 1 Okl. Cr. 358, 98 Pac. 447, at 458; *Hawkins v. United States,* 3 Okl. Cr. 651, 108 Pac. 561, at 567; *Allen v. Commonwealth,* 86 Ky. 642, 6 S. W. 645; *Cogdell v. State,* 43 Tex. Cr. 178, 63 S. W. 645; *Harris v. State,* 49 Tex. Cr. 627, 89 S. W. 1064; *Castro v. State,* 66 Tex. Cr. 282, 146 S. W. 553; *Moody v. State,* 52 Tex. Cr. 232, 105 S. W. 1127; *Henderson v. State,* 51 Tex. Cr. 193, 101 S. W. 245.)

Instruction No. 16 is erroneous because it required an open manifest act, and also that said open manifest act be clearly indicative of a present purpose to do injury, and in addition it is erroneous in that it required the circumstances to authorize the opinion that the deadly purpose then existed. (*People v. Davis,* 300 Ill. 226, 133 N. E. 320, at 323.)

A. H. Conner, Attorney General, and John W. Cramer, Assistant, for Respondent.

Instruction No. 3, relative to justifiable homicide, is correct. (C. S., secs. 8219, 8220.) Instruction No. 17 is correct. (*State v. Lyons,* 7 Ida. 530, 65 Pac. 236.)

It is not error for the court to refuse to give an instruction requested by the defendant where the same is fully covered by the instructions given. (*State v. Hoagland,* 39 Ida. 405, 228 Pac. 314; *State v. Cosler,* 39 Ida. 519, 228 Pac. 277.)

Where errors are assigned, if they are not discussed in the brief and no authorities are cited in support of the assignments, they will neither be reviewed, considered nor discussed by the court. (*State v. Brockman,* 39 Ida. 468, 228 Pac. 250; *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690.)

Where there is a conflict in the evidence, if there is substantial evidence to support the verdict, it will not be disturbed. (*State v. Bouchard,* 27 Ida. 500, 149 Pac. 464; *State v. Shepard,* 39 Ida. 666, 229 Pac. 87.)

All the instructions must be considered together, and although an individual instruction, standing alone, would appear to be improper, if the instructions as a whole correctly state the law, the judgment will be affirmed. (*State v. Cosler*, 39 Ida. 519, 228 Pac. 277; *State v. Sayko*, 37 Ida. 430, 216 Pac. 1036; *People v. Bernard*, 2 Ida. 193, 10 Pac. 30; *Loy v. State*, 26 Wyo. 381, 185 Pac. 796; *Johnston v. State*, 86 Tex. Cr. 276, 216 S. W. 192.)   Instruction No. 14 is correct.   (*State v. McCann*, 43 Or. 155, 72 Pac. 137.)

The law of self-defense is a law of necessity and that necessity must be real, or bear all the semblance of reality, and appear to admit of no other alternative before taking of life will be justified. (*People v. Bernard, supra; State v. Lyons, supra; Erwin v. State*, 29 Ohio St. 186, 23 Am. Rep. 733; *State v. Miller*, 73 S. C. 277, 114 Am. St. 82, 53 S. E. 426; *Weaver v. State*, 19 Tex. App. 547, 53 Am. Rep. 389; *State v. Reed*, 53 Kan. 767, 42 Am. St. 322, 37 Pac. 174; *Logue v. Commonwealth*, 38 Pa. 265, 80 Am. Dec. 481; *Meuly v. State*, 26 Tex. App. 274, 8 Am. St. 477, 9 S. W. 563; note, 74 Am. St. 717, 721; note, 109 Am. St. 805; note, 3 L. R. A., N. S., 535, 540, 543; note, 45 L. R. A. 688, 690, 695.)

A charge on a hypothetical statement of facts, declaring the legal result thereof, or stating that if the jury find the existence of certain facts, certain legal conclusions will follow, is not a charge on the facts, and does not invade the province of the jury.   (1 Randall's Instructions, p. 207; *People v. Kelly*, 146 Cal. 119, 79 Pac. 846; *People v. Creeks*, 170 Cal. 368, 149 Pac. 821; *Densley v. State*, 24 Ga. App. 136, 99 S. E. 895; *State v. Beal*, 95 Me. 520, 48 Atl. 124; *State v. Davison*, 74 N. H. 10, 64 Atl. 761; *State v. Duncan*, 86 S. C. 370, Ann. Cas. 1912A, 1016, 68 S. E. 684; *Reese v. State*, 83 Tex. Cr. 394, 203 S. W. 769; *State v. Gohl*, 46 Wash. 408, 90 Pac. 259; *State v. Fenton*, 30 Wash. 325, 70 Pac. 741.)

BUDGE, J.—Appellant was charged with the crime of murder in the first degree, found guilty and sentence of death imposed.   A motion for new trial was made and de-

nied. As no appeal was perfected from the order denying the motion for a new trial, this appeal is from the judgment.

It appears from the record that appellant and the deceased had been business associates, engaged in operating a billiard parlor in Twin Falls. A short time prior to the homicide their business relations had ceased, due to disagreements between them that resulted in ill will. At the time of the homicide appellant was conducting a barber-shop and the deceased was operating the billiard parlor.

On the evening of June 25, 1924, appellant was seen coming down the street with his wife in the direction of the place of business of the deceased. They stopped frequently, engaged in conversation, and appellant's wife made several attempts to get her hand in the overcoat pocket of appellant, who would push her away and get farther out toward the edge of the walk. Continuing thus they entered the billiard parlor of deceased and immediately upon entering appellant called out to the deceased, "Come here. I want you to tell me what you said about my wife." Appellant then walked toward the end of the bar near the card-table, where the deceased and three others were playing cards. There was a man sitting on a bench on the opposite side of the room and another standing near the bar, the latter of whom stepped behind the appellant as he walked towards the card-table. Appellant again addressed the deceased, who had not spoken, "I came in here to make you take back what you said about my wife." Thereupon deceased got up from his chair and answered that he had not said anything about anybody, and did not want any fuss or trouble in there, and ordered the appellant out, motioning toward the door with his right hand. The appellant then said, in substance, "I came here to make you prove what you said to my neighbors, that you were having sexual intercourse with my wife." After the deceased denied that he had said anything about appellant's wife and requested him to go on out, appellant drew a gun and began shooting into the body of the deceased, who moved slightly forward, his weight resting upon the edge of the table, and gradually sank to the floor where he died shortly thereafter. The appellant thereupon made the remark substan-

tially, that there was no man could say he had been having sexual intercourse with his wife and get by with it.

In the evening of the same day, after the homicide, appellant was in the sheriff's office and, according to the testimony of Deputy Sheriff Prater, made the following statement: "I went in there to see him about the things he was saying about my wife; when I talked to him he stepped behind the counter, got a glass and struck me with it; I told him if he struck me again he would never strike another man, and he started to hit me again and I let him have it."

According to the testimony of witness Finch, appellant made the following statement immediately after the homicide: "I shot the old man; I don't know whether I killed him or not. He has been bothering my wife and telling a lot of lies about her, and I went down there to make him take it back and straighten it up. I commenced talking to him and he ran behind the counter and picked up something and was going to throw it at me, and I shot him."

Witness Wheeling, for the state, testified that he had a conversation with appellant in May, 1924, in the billiard parlor, in which conversation appellant used the following language: "The old son-of-a-bitch moved his trunk out this morning. . . . . He got sore at me because I wanted him to pay something to the wife for the upkeep of his room, and he said he would get even with me. . . . . If the old son-of-a-bitch causes me any trouble I will just kill him and give myself up. I have got the gun right here."

On being asked, "What did you shoot him for?" appellant answered, 'Well, he was threatening my life and coming between me and my wife. I was afraid when he made so many threats on me, and then he says he was going to fix me, and throwed his right hand on his hip pocket; I was afraid he would pull his gun and shoot me.' "

There is evidence in the record that at the time he was shot the deceased had cards in both his hands. There is also evidence that deceased had cards in his left hand and that he had no cards in his right hand, as he motioned toward the door in ordering appellant to withdraw. The evidence further shows that a few minutes before the de-

ceased expired, cards were removed from both of his hands. The testimony of each of the three witnesses who were playing cards with the deceased was to the effect that when addressed by appellant the second time deceased got out of his chair, stood up, made no forward movement, was holding cards in one or both of his hands, and that he motioned toward the door with his right hand, when appellant drew his gun and began shooting.

When appellant left the room immediately after the shooting, and after reaching the sidewalk, and proceeded in the direction of the county jail, he made the remark, referring to the deceased, ''He won't bother me any more,'' and further stated, in effect, that he was on his way to give himself up.

The pistol used by appellant was an automatic and three or four shots entered the body of the deceased. On the front of the body there were three wounds, also a wound on the index finger of his right hand and on the little finger of his left hand. Deceased died from the wounds inflicted by appellant.

Appellant's wife testified on his behalf that prior to the date of the homicide the deceased had been bothering her and that he had asked her to leave her husband, saying, ''You are too good for him''; that he offered to help her with $300 if she would leave appellant and that he would follow her; that deceased called at appellant's residence on the afternoon of the day before the homicide, at which time he repeated the foregoing statement; that she ordered him out of the house and threatened to inflict bodily harm upon him. There is evidence to the effect that the deceased was not in the house of appellant at the time testified to by the appellant's wife. She further testified that when her husband reached home between 6 and 7 o'clock on the evening of the homicide, she informed him that the deceased had been bothering her and what he had said. Her testimony on the whole, as to the alleged statements of the deceased and where and when they were made, is unsatisfactory and more or less conflicting.

Appellant testified in his own behalf; he admitted the homicide and related certain conversations had with his wife with reference to the deceased. He stated that his wife asked him to accompany her to the place of business of deceased and remonstrate with him concerning his, deceased's, conduct toward her. He said that he and his wife left their home together and that he carried a revolver in the right-hand pocket of his overcoat; that he entered the building where deceased was and walked to about the center of the bar and then proceeded to the end of the bar, saying to the deceased, " 'Mr. Vandermark, I come over here to tell you so you don't bother my wife.' . . . . And he jumped out of the chair towards me and he make a pass towards me, and he says, 'I fix you,' and he throwed his right hand on his right hip pocket; I shot." Appellant also testified to certain alleged threats made by the deceased, communicated and uncommunicated; that the deceased had armed himself and was carrying a gun for him and had threatened to take his life and to take his barber-shop and mine from him. When asked whether deceased hit him with anything 'appellant answered, "Well, I was hit over here on this finger. I don't know what he hit me with. I threw up my hands to try to stop it, . . . . I told him to keep his hands off me." He was again asked, "Did he," referring to the deceased, "have anything in his hands?" to which appellant answered, "Well, I don't know whether he had something in his hands or not; I don't remember; I know something was shining; I don't know whether that was his ring or a glass or what it was." Q. "He didn't strike you or anything up there?" A. "Well, there was something shining like a glass; I ain't sure whether it was a glass or that big ring he had on that was shining." Q. "I asked you whether he hit you with anything up there?" A. "Well, I was hit over here on this finger; I don't know what he hit me with; I threw my hands up to try to stop it."

Appellant testified that he did not remember that anybody other than his wife had told him that the deceased had said anything about her, and that when he went into the pool-hall he was not mad or angry, but was worried. He

takes the position that, while admitting the homicide, he was justified in taking the life of the deceased in self-defense. It is upon the right of self-defense that he relies.

There are twenty-four assignments of error, twenty-two of which are predicated upon the action of the court in giving and refusing to give certain instructions. Errors not discussed have been considered and found to be without merit.

[1] The first assignment of error is directed against the action of the court in refusing to strike the testimony of witness Rife, for the reason that it was not proper rebuttal. That question is not here for review in this case because no exception to the court's ruling was taken or saved. (*State v. Brockman,* 39 Ida. 468, 228 Pac. 250; *State v. Ashby,* 40 Ida. 1, 230 Pac. 1013; *State v. White,* 33 Ida. 697, 197 Pac. 824; *State v. Ray,* 32 Ida. 363, 182 Pac. 857; *State v. Maguire,* 31 Ida. 24, 169 Pac. 175; *State v. Baker,* 28 Ida. 727, 156 Pac. 103.) However, we have carefully gone over this evidence and are of opinion that its admission was not erroneous.

[2] Specification of error 24 is as follows:

"That the verdict is contrary to law and the evidence in that there is no competent evidence in the record that the appellant in the killing of deceased acted in a wilful, deliberate or premeditated manner, and at the most the evidence discloses that the crime committed, if any, to have been of no higher degree than manslaughter."

There is sufficient evidence in the record to establish deliberation and premeditation, and there is no substantial evidence, to our minds, to support the contention that appellant was guilty of manslaughter only.

[3, 4] Assignment of error No. 2 attacks instruction No. 3. This instruction defines justifiable homicide in the language of the statute, C. S., sec. 8219, with the exception that the word "also," appearing after the words "homicide is" in the first line of said section, is omitted. Said instruction also includes C. S., sec. 8220, with the exception of the words "of any" after the word "commission," appearing in the first line of said section. Appellant complains that the omis-

sion of the word "also" from C. S., sec. 8219, had the effect of advising the jury that under no circumstances was homicide excusable, except as set forth in said section and in said instruction, and that the court, in quoting C. S., sec. 8220, and leaving out the words "of any," entirely changed the meaning of said section of the statute, and that this is particularly true in view of the fact that the court refused to add to such instruction the provisions of C. S., sec. 8217. Omission of the court to include C. S., sec. 8217, in instruction No. 3, which section defines excusable homicide, was not error. There is no evidence that would require the inclusion of that section. Neither is there any evidence that would authorize the inclusion of C. S., sec. 8218, which defines justifiable homicide by an officer. The omission, therefore, of the word "also" following the words "homicide is" in C. S., sec. 8219, was not erroneous for the reason that the word "also" refers back to C. S., secs. 8217 and 8218. The omission of the words "of any" was not prejudicial error, for the reason that the court included not only subdivisions 2 and 3 of the preceding section but set out in its entirety C. S., sec. 8219, and, since the entire section was given, there is no merit in the contention that the omission of the words "of any" entirely changed the meaning of said section of the statute. In no view of the situation can it be logically contended that the jury was misled by the omission of the words complained of. (*People v. Webster,* 13 Cal. App. 348, 109 Pac. 637; *Loy v. State,* 26 Wyo. 381, 185 Pac. 796; *State v. Martin,* 29 Mont. 273, 74 Pac. 725; *State v. Farris,* 26 Wash. 205, 66 Pac. 412.)

[5] Appellant complains of instruction No. 14, which reads as follows:

"I further instruct you, in relation to the law of self-defense that one cannot claim its benefits after he has intentionally put himself where he knows or believes he will have to invoke its aid. The circumstances justifying an assault, in the law of self-defense, must be such as to render it unavoidable. If you believe from the evidence, and beyond a reasonable doubt, that the defendant sought a meeting with the deceased for the purpose of provoking a diffi-

culty with said deceased, or with the intent to take the life of the said deceased or to do him such serious bodily injury as might result in death, then he would not be permitted to justify on the ground of self-defense, even though he should thereafter have been compelled to act in his own defense. The law says that, if you invoke the law of self-defense, you must show that you were without fault in bringing about the necessity for the killing.''

It is urged that the foregoing instruction is objectionable for two reasons,—that it declares the legal effect of certain portions of the evidence, and that it advises the jury that the plea of self-defense could not be maintained if the appellant was first the aggressor, even though he should thereafter have been compelled to act in self-defense. Upon this point appellant places much reliance on the case of *State v. Dunlap,* 40 Ida. 630, 235 Pac. 432, in which case the court gave the following instruction:

''I further instruct you, in relation to the law of self-defense, that one cannot claim its benefits after he has intentionally put himself where he knows or believes he will have to invoke its aid. Circumstances justifying assault, in the law of self-defense, must be such as to render it unavoidable. If you believe from the evidence, and beyond a reasonable doubt, that the defendant could have avoided any conflict between himself and the said C. A. Russell, without increasing the danger to himself, it was his duty to avoid such conflict and so render a resort to the law of self-defense unnecessary.''

Objection was made to the latter portion of the above instruction, namely, ''If you believe from the evidence and beyond a reasonable doubt that the defendant could have avoided any conflict between himself and the said C. A. Russell, without increasing the danger to himself, it was his duty to avoid such conflict and so render a resort to the law of self-defense unnecessary.'' The opinion holds that the jury might have inferred, in view of the evidence in the case, that Dunlap should have given up the cattle on the approach of Russell or should have retreated, if by so doing he did not increase the danger to himself. But there Russell

was the aggressor and brought on the difficulty. Dunlap was not called upon under the facts either to give up the cattle or retreat into the house or elsewhere, but had a right to defend himself.

In the instant case appellant was the aggressor and brought on the affray. There is no evidence that would warrant the jury in finding that the deceased, after appellant provoked the affray, became the aggressor. The facts of the two cases are not the same. (See *State v. McCann,* 43 Or. 155, 72 Pac. 137.)

It was the province of the jury to find the facts and the duty rested upon them to find the legal effect of the testimony. [6] This right was not taken away from the jury by the instruction given by the court. As we read the instruction, the court did not declare the legal effect of certain portions of the evidence, neither did it advise the jury that the plea of self-defense could not be maintained if appellant was the first aggressor, even though he thereafter was compelled to act in self-defense. Even conceding that such a strained construction might possibly be placed upon the language used in instruction No. 14, when read and considered in connection with instructions Nos. 5, 6, 7, 11 and 12, no such construction as contended for is justified. [7] Ordinarily, no one instruction can be selected from all of the instructions given and the meaning of the court fairly ascertained. All of the instructions must be read and considered together. (*State v. Cosler,* 39 Ida. 519, 228 Pac. 277; *State v. Sayko,* 37 Ida. 430, 216 Pac. 1036; *State v. Ramirez,* 33 Ida. 803, 199 Pac. 376; *State v. Petrogalli,* 34 Ida. 232, 200 Pac. 119; *State v. Curtis,* 29 Ida. 724, 161 Pac. 578.) Considering all of the instructions together given upon the point complained of, we are of the opinion that it was not only improbable but also impossible for the jury to have been misled as to the law of self-defense and the appellant's right to justify thereunder, or to reach the conclusion that the court declared the legal effect of certain portions of the evidence. On the contrary the court emphatically 'and repeatedly in its instructions admonished the jury that it was their duty to find the facts and that they were the exclusive judges of the

facts, the credibility of the witnesses and the weight to be given to their testimony. [8] And in this connection it might be added, as was said in *State v. Wright,* 12 Ida. 212, 85 Pac. 193, "An instruction that leaves the questions of fact to be found by the jury and only suggests the law applicable in case they find certain facts to exist, is not objectionable ,on the ground that it assumes that certain facts do exist." ,The rule would seem to be, in criminal cases as in civil, that a charge on a hypothetical statement of facts, declaring the legal result thereof, or stating that if the jury find the existence of certain facts, certain legal conclusions will follow, is not a charge on the facts and does not invade the province of the jury. (Randall's Instructions to Juries, 207, sec. 117; *State v. Gohl,* 46 Wash. 408, 90 Pac. 259; *State v. Fenton,* 30 Wash. 325, 70 Pac. 741.)

[9] Coming now to instruction No. 15, and to that particular portion complained of, wherein the court instructed the jury that "the defendant himself must have entertained an honest belief in the existence of such necessity," that is, of taking the life of the deceased, such statement was not contrary to law. (*People v. Hecker,* 109 Cal. 451, 42 Pac. 307, 30 L. R. A. 403; *State v. Reed,* 53 Kan. 767, 42 Am. St. 322, 37 Pac. 174; *People v. Donguli,* 92 Cal. 607, 28 Pac. 782.) In *State v. Lyons,* 7 Ida. 530, 64 Pac. 236, the following language is used: "The instruction numbered 35 says that appellant must have believed that the shooting was necessary to prevent the infliction upon himself of a great bodily injury by the party stricken or shot. This, in our opinion, is the law."

[10] Again in the same instruction, and to which complaint is made, the court instructed the jury that the circumstances surrounding appellant must have been such as to impress a reasonable man under the same state of facts with the belief of imminent peril and of the existence of an urgent necessity to take the life of his assailant, as the only apparent alternative of saving his own life, or else of preventing the infliction on him (appellant) of grievous bodily harm. Such language is unobjectionable. The law of self-defense is founded in necessity, and when it is made to appear

in any case that no necessity, either real or apparent, exists, the defense of self-defense fails. (*Erwin v. State,* 26 Ohio St. 186, 23 Am. St. 733; *State v. Miller,* 73 S. C. 277, 114 Am. St. 82, 53 S. E. 426; *Weaver v. State,* 19 Tex. App. 547, 53 Am. Rep. 389; *Meuly v. State,* 26 Tex. App. 274, 8 Am. St. 477, 9 S. W. 563; *State v. Lyons, supra; People v. Bernard,* 2 Ida. 193, 10 Pac. 30; *State v. Reed, supra; Logue v. Commonwealth,* 38 Pa. 265, 80 Am. Dec. 481; note, 109 Am. St. 805; note 3 L. R A., N. S., 535 et seq.)

In considering instruction No. 15, instructions Nos. 11 and 12 should be considered in connection therewith, which removes appellant's objection to instruction No. 15. (*State v. Neil,* 13 Ida. 539, 90 Pac. 860, 91 Pac. 318; *State v. Corcoran,* 7 Ida. 220, 61 Pac. 1034; *People v. Bernard, supra; Loy v. State, supra; Johnston v. State,* 86 Tex. Cr. 276, 216 S. W. 192.)

[11] What has been said with reference to instruction No. 15 applies to instruction No. 16. When we read instructions Nos. 11 and 12 in connection with instruction No. 16, the latter is not objectionable. Complaint is made of that portion of instruction No. 16 which uses the term "clearly indicative," the court having instructed the jury that "neither previous threats nor even acts of hostility, howsoever violent, nor the violent and dangerous character of the deceased, if you should so find, will not of themselves excuse the slayer; but there must be some overt act (that is, an open, manifest act) on the part of the deceased at the time, clearly indicative of a present purpose to do injury." While the words "clearly indicative" might properly have been omitted, instruction No. 11 admonishes the jury that if "you further believe from the evidence that at the time of the killing, the deceased, by some act then done, word spoken, or some demonstration made manifesting an intention to execute the threats or purported threats, so made, which act, word, or demonstration reasonably appeared to the defendant, viewed from his standpoint alone, that the threats were about to be executed, and that his life was then in danger, or his person, of serious bodily injury, then and in such case the defendant was not bound

to retreat, but could stand his ground, and would be justified in slaying the said A. B. W. Vandenmark, and, if you so believe you will acquit the defendant,'' and clearly removes all objection to the use of the words complained of.

[12] If the instructions taken as a whole are substantially correct and the jury could not have been misled to the prejudice of the defendant, the giving of an erroneous instruction is not error. (*State v. Silva*, 21 Ida. 247, 120 Pac. 835; *State v. Marren*, 17 Ida. 766, 107 Pac. 993; *State v. Neil, supra; State v. Bond*, 12 Ida. 424, 86 Pac. 43; *State v. Wetter*, 11 Ida. 433, 83 Pac. 341; *State v. Rice*, 7 Ida. 762, 66 Pac. 87; *State v. Corcoran, supra; People v. Warren*, 130 Cal. 683, 63 Pac. 86.)

In view of what has heretofore been said, instruction No. 17 is a correct statement of the law. (*State v. Lyons, supra*.)

[13] Instruction No. 18 is attacked principally upon the ground that it is inconsistent with other instructions and is said to be vicious and shifts the burden of proof upon the appellant. There is no foundation for the statement that the instruction is vicious. Neither are we of the opinion that it is subject to the criticism that it shifted the burden of proof. In instruction No. 9 the jury are correctly instructed as to the burden of proof, the court using the following language:

"The court instructs the jury that Section 8952, C. S., provides: 'Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justified or excusable.'

"The section casts upon the defendant the burden of proving circumstances of mitigation or that justify or excuse the commission of the homicide. This does not mean that he must prove such circumstances by a preponderance of the evidence, but that the presumption that the killing was felonious arises from the mere proof by the prosecution of

the homicide, and the burden of proving the circumstances of mitigation, etc., is hereby cast upon him. He is only bound under this rule to produce such evidence as will create in the minds of the jury a reasonable doubt of his guilt of the offense charged. It can make no difference whether this reasonable doubt is the result of evidence on the part of the defendant tending to show circumstances of mitigation, or that justify or excuse the killing, or from other evidence coming from him or the prosecution.''

The foregoing instruction correctly states the law as to burden of proof. (*State v. Rogers,* 30 Ida. 259, 163 Pac. 912; *Prince v. United States,* 3 Okl. Cr. 700, 109 Pac. 241; *State v. Crean,* 43 Mont. 47, Ann. Cas. 1912C, 424, 114 Pac. 603; *People v. Bushton,* 80 Cal. 160, 22 Pac. 127, 549; *People v. Petruzo,* 13 Cal. App. 569, 110 Pac. 325.)

In *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690, cited by appellant in support of his contention that the trial court in the foregoing instruction shifted the burden of proof, .it will be observed that the court instructed the jury that if the state proved beyond a reasonable doubt that the de-·fendant shot and killed the deceased, the plea of self-defense interposed by the defendant must establish and prove such defense by a preponderance of the evidence, and that if the .jury found from the evidence beyond a reasonable doubt that the defendant had failed by a preponderance of the evidence to establish and prove such defense, it would then be their duty to convict the defendant,—while in the instant case the court instructed the jury that the appellant was only bound to produce such evidence ''as will create in the minds of the jury a reasonable doubt of his guilt of the offense charged.'' Neither are we in accord with the contention that the instruction is inconsistent, when read in connection with the entire charge. On the contrary it harmonizes with the other instructions defining the law of self-defense.

[14] We are not unmindful of the provisions of C. S., secs. 9084 and 9191, which provide that,—

''After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to excep-

tions which do not affect the substantial rights of the parties.''

''Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right.''

It will thus be noted that the people of this state by legislative enactment have adopted the established principle of law that no criminal case shall be reversed for technical errors when it appears from the whole case that substantial justice has been done. The sections of the statute above cited were undoubtedly inserted for the express purpose of avoiding the many miscarriages of justice occasioned by a strict adherence to the old rule of presumption that any error is prejudicial, and it is our duty to give to the statutes the effect intended by the legislature.

We have carefully examined instruction No. 19, complained of, and are of the opinion that the objections urged against it have been sufficiently disposed of and that no further comment is necessary.

[15, 16] It is true that some of the instructions and portions of others complained of, when read and considered alone, do not accurately state the law, but when in the light of the entire charge they are not inconsistent, prejudicial or misleading, they do not constitute reversible error. The rule in this state is well settled that all the instructions given in a case must be read together as a whole, and where they are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole instructions rather than to an isolated portion thereof. (*Taylor v. Lyttle,* 29 Ida. 546, 160 Pac. 942; *State v. Curtis, supra; State v. Curtis,* 30 Ida. 537, 165 Pac. 999; *Raide v. Dollar,* 34 Ida. 682, 203 Pac. 469; *Cady v. Keller,* 28 Ida. 368, 154 Pac. 629; *Osborn v. Cary,* 28 Ida. 89, 152 Pac. 473, and cases therein cited.)

[17] Appellant complains of the action of the trial court and assigns as error its refusal to give fourteen requested instructions. We have carefully examined all of the in-

structions given and those refused and have reached the conclusion that the court's instructions, as given, fairly and fully state the law to be applied to the facts, which being true, appellant suffered no injury by the refusal of the court to give the numerous requested instructions. (*People v. Knox* (Cal. App.), 241 Pac. 928; *Lawrence v. State* (Ariz.), 240 Pac. 863; *State v. Cosler, supra; State v. Hoagland,* 39 Ida. 405, 228 Pac. 314; *State v. Sayko, supra; State v. Petrogalli, supra.*) We do not mean to say that the requested instructions were all covered by the instructions of the court, but feel safe in saying that they were substantially covered, and such as were refused were not applicable to the facts or not necessary to a proper understanding by the jury of the law to be applied to the facts. The court instructed the jury clearly and fully upon the law of murder, in the first and second degree, manslaughter, both voluntary and involuntary, the law of self-defense, the burden of proof, and the presumption of innocence and reasonable doubt.

[18] The court failed to instruct the jury, however, and it is assigned as error, that all of the instructions contained in the charge should be considered and construed together, and appellant has called attention to *State v. Dunlap, supra,* where in the course of the opinion the following language is used:

"The court's charge to the jury should contain an instruction to the effect that all instructions contained in the charge of the court should be considered and construed together. In the instant case no such instruction was contained in the court's charge, and we cannot safely say that the jury was not misled by some of the instructions that were given."

We do not understand that in the use of the language above quoted this court held or intended to hold that the failure of the trial court to charge the jury that all instructions contained in the charge should be considered and construed together would constitute reversible error. While it is true the writer of the opinion stated that the court's charge to the jury should contain such an instruction, such

language cannot be so construed as to mean that its absence would constitute reversible error. However, there is no merit in appellant's contention for the further reason that it is a well-settled rule in this state that an omission to charge on a particular point cannot be assigned as error where no instruction on the point is requested by the appellant. (*State v. Knudtson,* 11 Ida. 524, 83 Pac. 226; *State v. Harness,* 10 Ida. 18, 76 Pac. 788; *State v. McAvoy,* 57 Or. 1, 109 Pac. 763; *People v. White,* 5 Cal. App. 329, 90 Pac. 471; *Robinson v. Territory,* 16 Okl. 241, 85 Pac. 451; *Mow v. People,* 31 Colo. 351, 72 Pac. 1069.)

We are not disposed to make further comment on the facts or the motive which prompted appellant to take the life of the deceased, or the manner or circumstances leading up to the killing. We are satisfied that appellant had a fair and impartial trial. No error appearing in the record that would justify a reversal of the judgment, the same is affirmed.

William A. Lee, C. J., and Wm. E. Lee, Givens and Taylor, JJ., concur.